*288 OPINION of the Court, by
Ch. J. Boyle.
Wilkinson being indebted to M’llvain ill a considerable sum, for the purpose of securing the payment thereof, gave a mortgage upon “ all the Ms that he then owned in the town of Frankfort, whether he had a legal or equitable title theretoThe money not being paid at the time specified in the mortgage, MTlvain filed his bill *289 against Wilkinson and obtained a decree of foreclosure, and an order of sale under which the lot No. 82 was s ski, and Starling, became the purchaser. Blair then filed his bill against Wilkinson, M’llvain and Starling, in which he alleged that prior to the mortgage to M’ll-vain, he had purchased the lot of Wilkinson, and paid him therefor ; and grayed that a conveyance might be decreed to him. ' •
Upon a bill filed »gamft w for a execution of a contradi fot fak 0¡ a iot,& againft a ?ur. fubfe! quent to the ai. foge<f contra; not beevidence againft the c0~ dsetb"do“'e’r klng “¿ee bilj pro conftjfo a. |*‘“® w, fof. ¿⅛⅛, °und*^ cree, as be. tween the con»
Example of »letter and an-⅛ oni° a' p°oPofidon for afaie, but not a contradi concluded*
The bill was taken for confessed, as to Wilkinson. The other defendants answered, and did not admit, but required proof of the purchase by Blair, and insisted on the statute against frauds and perjuries.
A decree was given in favor of Blair by the court below, and M’ilvain and Starling have appealed to this court.*
Before we proceed to examine the evidence adduced in support of the contract for the purchase of the lot in question by Blair, or the effect of the statute against frauds and perjuries upon that evidence, we will con-aider an objection taken to the efficacy of the mortgage deed to convey Wilkinson’s interest in the lot, if any he had, to M’llvain. The objection is not made on the score of any informality or want of ceremony in the execution of the deed, but on the ground that the expression used in the description of the lots intended to be conveyed is too general.
This objection is certainly novel in its nature. As far as we are aware it is unsupported by any authority, nor can we perceive any reason to justify it. The expression used, though general, is not uncertain. It clearly arid explicitly manifests the intention of the parties, and tliei'e is nothing unlawful in that intention. There may indeed be more difficulty in ascertaining the lots intended to be conveyed, where the language used in describing them is thus general, than if the lots had been designated by their numbers. But it is in the degree and not in the nature of .the difficulty that the two cases dif- *290 fei'. It results in neither case from no ambiguity orf the face of the deed, but from extrinsic circumstances, and in both cases resort must bo had to evidence alimu (h for the purpose of identifying the lots which are the subject of the conveyance.
If then the mortgage be good to convey such lots as Wilkinson owned at the time of its execution, the question occurs, whether the lot in dispute is of that description ? Both parties derive their claim from Wilkinson, ami consequently both must admit that he was the original proprietor : and as it is not pretended that lie had s old the l ot to any one else, he m ust have remained the proprietor at the date of the mortgage, unless the contract for the sale of it to Blair can be substantiated. This leads to an examination of the evidence adduced in support of that contract.
In doing this we must put out of the case the admission of Wilkinson implied by taking tiie bill for confessed against him.: for if he had answered, and expressly admitted the contract, it coaid have had no effect against the other defendants — 1st, Because the answer of one defendant cannot be received as evidence against another; and 2dly, Because the confession of a vendor after he has parted with his title, is not admissible in derogation of the title in the hands of the vendee. Much more then, is his implied admission, arising from the bill being taken for confessed, inadmissible evidence. Besides this, there is no other proof of the contract, except what is contained in a letter addressed by Wilkinson to Blair, in which he says, “ You mentioned to me your wish to purchase a lot in Frankfort, and I shall feel much pleasure in accommodating you : therefore name the lot to me, and the price winch it would bring, and I will take payment from your head, your pen an d your tongue.”
This is clearly but the inception of a contract, not its consummation. It is a declaration of Wilkinson’s willingness to sell, but it fixes neither the lot nor its price, both of which are essential to a contract of sale. If it be supposed that it was the intention of Wilkinson to be bound to sell to Blair any lot, and at any price the lalter should name, and that is certainly the utmost effect that can be given to the letter of Wilkinson; still until the lot and the price were named by Blair to Wil *291 kinson, it could not be said to be a contract! and there is no proof that Blair ever signified to Wilkinson either the lot or its price,
As there is then no sufficient proof of either a parol or written contract, there need nothing be said as to the effect of the statute against frauds and perjuries in this case.
The decree must be reversed with costs, and the cause remanded that a decree may be entered dismissing the bill with costs as to Starling and M’llyain.

 In September 1796, Wilkinfon wrote íí*-'Blair an anfwer to Blair’s letter refpedting a Lt in Frankfort which Blair wanted y Blair being the agent of Wilkinfon — In October 1797 Blair took pufleflion of the lot and inclofed it and built on it — In July 1811 Blair filed his bill againft Wilkin-fosfora conveyance — April 24 1S10 Wilkinfon executed a mortgage to M’llvain — In March 1812 Biair’s bill againft Wilkinfon, taken fro confejjb —July *7 1813 the lot was fold under a decree of forecloiure bf me mortgage 5 that mortgage and decree not fpecifying any lots — July 22 1813 Blair amended his bill and made the purchalers of the lot parties to his bill.