JOHN J. HAMILTON

*v.*

MARY M. DOOLITTLE *et al.*

1. WITNESS—*competency—interest.* A grantor in a deed containing covenants for title, is not a competent witness on behalf of the plaintiff in ejectment, who relies upon the deed, to prove its execution. He has a disqualifying interest in the result of the suit.

2. In such a case, the grantor would not be called against his interest; it would be to his interest to maintain the title which he had covenanted to make good.

3. Such a grantor is, for the same reason, incompetent to prove that he gave notice to a subsequent purchaser that he had already sold and conveyed the land to another person.

4. COVENANTS FOR TITLE—*where title is defeated by one subsequently accruing.* Where a party has conveyed land by deed with covenants for title, his liability upon his covenants will not necessarily cease to exist upon the failure of the title resulting from one subsequently accruing. Such would, no doubt, be the case, if the title failed from the acts or omissions of the grantee or other parties; but it could not be so where the title has failed by the action of the grantor himself, as in a subsequent sale and conveyance of the land whereby the title under a prior unrecorded deed would be defeated.

5. QUIT CLAIM DEEDS—*what will pass thereby.* While a quit claim deed is as effectual to pass title as a deed of bargain and sale, still, like all other contracts, it must be expounded and enforced according to the intention of the parties, so as to pass only such land as would be properly embraced in the language used.

6. SAME—*as to prior unrecorded deeds.* If the words used in the quit claim deed indicate an intention on the part of the grantor to pass only such land as

he owns at the time of its execution, then lands embraced in a prior valid deed will be held to be reserved from its operation, and will not pass thereby, although the prior deed remains unrecorded.

7. SAME — *application of the rule in this case.*   In this case, the words used to describe the property intended to be conveyed by the quit claim deed were as follows: "All lots, blocks, land and fractional blocks, or any interest therein, in the town of Pekin, that I have; also all my right and interest, or in anywise appertaining, together with the right of ways. This deed is intended to convey all the interest the said grantor has in the town of Pekin." *Held,* that this language only embraced such land as the grantor owned at the time of the execution of the deed, and would not affect the title under a prior valid conveyance, although such prior conveyance remained unrecorded.

8. SAME — *as regards a prior deed which is void or voidable.*   But a prior deed which is void or even voidable is not regarded as embraced in such a reservation in a subsequent quit claim deed; and the subsequent deed will, in such case, be upheld, as binding and sufficient to pass the title as against the prior conveyance.

9. SAME — *as against a prior deed which is imperfectly acknowledged, and cannot be proven.*   Or where the prior deed is so insufficiently executed, as regards the certificate of acknowledgement, that its execution cannot be proven thereby, and its execution cannot be otherwise proven so that it can be admitted in evidence as a conveyance, it cannot be held to constitute a conveyance, and so will not control the operation of a subsequent quit claim deed which was designed to pass all the lands owned by the grantor at the time of its execution.

WRIT OF ERROR to the Circuit Court of Tazewell county; the Hon. JAMES HARRIOTT, Judge, presiding.

This was an action of ejectment brought in the court below, by Mary M. Doolittle and Irwin B. Doolittle, minors, who sue by their next friend, Jesse A. Nason, against John J. Hamilton, for the recovery of lots eleven and twelve, in block seventy-six, in the city of Pekin.

The plaintiffs claim as children and heirs at law of Irwin B. Doolittle, deceased, who was the grantee of Peter Menard, by deed, with covenant of warranty, bearing date on the 22d of June, 1844, and recorded September 22d, 1858, for the lots in controversy. This deed purported to have been acknowledged before a notary public, but on account of there being no proper seal attached to his certificate, other proof of its execution was required. The plaintiffs then introduced the grantor as a witness to prove the execution of the

deed, and he was permitted to testify against the objection of the defendant, who excepted.

The defendant claimed to derive title, as a remote grantee, under a quit claim deed executed by the said Peter Menard to Samuel P. Bailey, on the 1st of September, 1858, and recorded on the day following. The words used in this deed to show what lots, etc., were intended to be conveyed thereby, are as follows : "all lots, blocks, land and fractional blocks, or any interest therein, in the town of Pekin, county of Tazewell, and State of Illinois, that I have; also all my right and interest, or in anywise appertaining, together with the right of ways. This deed is intended to convey all the interest the said Peter Menard has in the town of Pekin, now city, in said county."

The defendant having introduced in evidence the remaining deeds constituting his chain of title, rested his case.

Plaintiffs then recalled Peter Menard, to whose testimony defendant objected, because of his interest in the result of the suit, being warrantor and general covenantor in the deed through which plaintiffs claimed. Objections overruled, and Menard testified, that when he made the deed to Bailey, read by defendant, he told Bailey he had not an inch of land in Pekin ; that his last remaining interest he sold to W. D. Briggs, and did not think he had anything left in Pekin, which had not been sold and deeded away. Bailey then said : the deed to Briggs did not cover anything he wanted ; that Briggs' deed only related to *undivided* lots ; he wanted a release of my interest in the *divided* lots. I replied I did not have any interest in these lots to release. But Bailey persuaded me, and I told him if he was willing to give something for nothing, and would make a deed to one Pearl of a lot I had originally sold to him in Wesley City, and to which lot Bailey made some claim, and wait till I could go to Pekin and look into the matter, I would give him the deed, if all was right. Bailey said he would make the deed to Pearl, but was unwilling to wait for me to go to Pekin. I at

length yielded, and made Bailey the deed, and he gave me a bond to make the deed to Pearl of the lot in Wesley City. That lot might perhaps sell, with good title, for $8 or $10, and could not have been worth more than $50. I did not value my interest in Pekin at anything, and did not believe I had any there when I made Bailey the deed.

The defendant introduced counter evidence upon this point, and the cause was submitted to the jury.

The trial resulted in a verdict for the plaintiffs. A motion for a new trial was overruled, and judgment entered upon the verdict. The defendant thereupon sued out this writ of error.

Two questions arise under the assignment of errors:

1. As to the competency of Peter Menard, the grantor in the deed to Doolittle, as witness to prove its execution, and to prove notice to his subsequent grantee.

2. As to the effect of the subsequent quit claim deed to to Bailey, as against those claiming title under the prior unrecorded deed.

Mr. B. S. PRETTYMAN for the plaintiff in error:

1. Menard was not a competent witness for his grantee to prove the execution of the deed, because it contained covenants for title which would create an interest in him to maintain the title under it. Only those who convey by quit claim, or without warranty, are permitted to testify for the grantee when the title of the property is in controversy. *Cain* v. *Henderson*, 2 Bin. R., 108; *Dornick* v. *Remelech*, 10 Serg. & Rawle, 84; 3 Watts, 487; see also 1 Greenlf. Ev., p. 397.

In this case, the controversy relates to the title of the property in dispute. The title is warranted by the witness to the plaintiffs' ancestor, who call him to support his covenants. But it is contended that his liability is alike in both cases, as he would be liable to Bailey or his assigns; but

this is assumed, and not true in fact.   The consideration in one deed is over $1000 and warranty, in the other only $200 and quit claim.

But the case is like a controversy by two tenants from the same landlord contesting for the possession of the land, by virtue of leases from the same lessor; and when two tenants contest for possession of the same land, the lessor is not a competent witness.   2 Stark. Ev., 541.

But Menard is called to show that when he sold and conveyed to Bailey, he had no title then to sell and convey in the premises described in the deed; yet, after making a deed, a grantor is estopped from saying he had no title to the thing granted, (1 Stark. Ev., 302;) and a grantor is generally estopped from denying that he had title to the thing sold and conveyed.   1 Greenlf. Ev., 24.

The declarations of a grantor, made after a grant, are not admissible against a grantee or those holding under him, to prejudice their rights under the grant.   *Simpkins* v. *Rodgers*, 15 Ill., 398.

During the life-time of a grantor in an unrecorded deed, the apparent title is in him; and he who purchases that apparent title in good faith, it is considered on all hands, is protected by the statute.   *Kennedy* v. *Northup*, 15 Ill., 157.

But it is insisted that Bailey is not a purchaser in good faith, and that his purchase was in fraud of the rights of plaintiffs below; yet there is no evidence tending to show a want of good faith except the testimony of Menard alone, which was improperly received, on account of his interest, and also because he was at the time estopped by law; and it is also wholly contradicted by the testimony of Bailey, a witness competent for defendant, having been fully released before testifying; and in order to defeat a subsequent purchase for fraud, it must be proved positively, and cannot be presumed.   This court, in the case of *Rogers* v. *Wiley*, 14 Ill., 65, held, that to take a case out of the registry act, so as to defeat the title of a subsequent purchaser who first places his deed

on record, on the ground that he had actual notice of a prior unrecorded deed of the same premises, the proof of such notice must be clear and positive, so as to leave no reasonable doubt that the taking of the second deed was in bad faith towards the first purchaser; and the same doctrine is laid down by the court in the case of *Doyle* v. *Teas*, 4 Scam., 244, where the court say that nothing short of actual fraud shall supercede a conveyance actually recorded; and it is only by possession or actual notice clearly proved, that a registered conveyance can be postponed; and similar is the principle laid down in the case of *Jackson* v. *Von Valkenberg*, 8 Cowen, 260.

Messrs. COOPER & MOSS for the defendants in error:

The sole objection taken to the deed from Menard to Doolittle was as to the proof of its execution. Being acknowledged before a notary, and attested only by his private seal, Menard himself was called, who proved he made the deed at the time it bore date. He was a competent witness for this purpose, being no party to the record, and his testimony being *against*, and not *for* his interest; as the effect of establishing said deed, is to hold him on his covenants of warranty and for title, contained in it.

Menard having *specially* and *by numbers*, conveyed said lots to said Doolittle, in December, 1844, his deed of September 1, 1858, to Bailey, passed no title and was improperly admitted in evidence. Judged by its terms, this latter deed was not intended to convey any property or interest which Menard had before sold and deeded away, and falls clearly within the rule laid down in *Brown* v. *Jackson*, 3 Wheat., 448, and affirmed by this court in *McConnell* v. *Reed*, 4 Scam., 121–2, and *Butterfield* v. *Smith*, 11 Ill., 485.

It is a mere release, *general* and not *specific* in form, of "all my right, title, interest and claim, both in law and equity, in and to all lots, blocks, lands and fractional

blocks, or any interest therein, in the town of Pekin,"
etc., "*that I have,*" and "this deed is intended to convey
all the interest the said Peter Menard *has* in the town of
Pekin, now city," etc. These are plainly words *in prae-
senti,* designed to designate and pass such right, title and
interest only as the grantor *then owned,* and not anything
which was not *then* rightfully his to sell and convey.

But admitting this deed to be good to pass title to *bona
fide* purchasers without notice, Bailey could not take under
it. He was not an innocent purchaser. This, Menard's
testimony clearly shows.

It is contended, however, that Menard is an incompetent
witness to impeach Bailey's title, because he thus relieves
himself from liability on the covenants in his deed to
Doolittle. The objection rests on a misconception of the
binding force of those covenants. Having a clear title to
the lots when he deeded to Doolittle, as the record ad-
mits; and having passed that title unimpaired in any way,
to Doolittle, Menard did all he was or could be called on
by those covenants to perform. It is only as against
claims growing out of defects existing in the title, at the
time, or prior to the making of the deed, and not to in-
cumbrances, or claims arising from matters subsequent,
that such covenants are of force.

That Menard intended to disturb in any way the Doo-
little title, by his deed to Bailey, will not be contended;
nor will it be presumed, in view of the form of the deed
itself, and other facts developed in the case; and if injury
resulted to the claimants under the Doolittle deed, it was
from the fact that their deed was not recorded, for which
Menard could not be held responsible.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the
court:

This contest grows out of claims to the land in controversy,
based upon two conveyances made by the same vendor, at

different times to different persons    Menard, in 1844, con-
veyed the lots to Doolittle, the father of Defendants in error.
This deed was, however, not recorded until the 22d day of
September, 1858.   He again sold the land to Bailey on the
1st day of September, 1858, and this latter deed was recorded
on the following day.   Bailey conveyed the premises to Mil-
ner on the 23d day of October, 1858, and the deed was re-
corded on the same day.   Milner sold to Prettyman by deed
dated the 1st day of February, 1859, which was recorded on
the 7th day of that month.   Prettyman sold the premises to
Priddy by deed of the date of the 17th of May, 1859, which
was recorded on the 26th of that month.   Priddy conveyed
to plaintiff in error on the 6th of November, 1860, and his
deed was recorded on the 7th day of the following December.

Defendants in error on the trial below offered in evidence
the deed from Menard to their father; but it was rejected
for the want of a seal to the certificate of acknowledgment
of the notary public before whom it was attempted to be
executed.   To prove its execution, Menard, the grantor, was
called as a witness.   It was objected that he was incompetent
as a witness because the deed contained covenants of war-
ranty, but the court, against objection, admitted him and
allowed him to testify, which is now assigned as error.   We
are aware of no case which has gone the length of permitting
the grantor by deed containing covenants for title to give
evidence in a case in which the validity of the title is in-
volved. · Such a person has, it is believed, always been held
to have a disqualifying interest in the event of the suit.

. It is insisted in this ·case, that the witness is called against
his interest.   That it was his interest to invalidate the deed,
and thereby avoid his covenants.   This is not the true atti-
tude of the grantor.   It is obviously his interest to maintain
the title which he covenanted to make good.   Nor does it
follow, that to defeat a recovery under the deed would
absolve him from liability on his covenants.   A failure to
recover would fix the failure of title, which he could not
dispute.   And it would afford a material link in the chain

of evidence to establish his liability. Nor could he in an action of covenant on the deed establish the deed to have been void, by showing that the land could not be recovered under this deed. And where it is shown that no title passed by the execution and delivery of the deed, then the liability is established under his covenants. It does not follow, that because the deed was not sufficiently proved to bind third parties, that it therefore was not binding between the parties to the instrument. As between them, and as a covenant, it might be proved as any other written instrument, to entitle it to be read in evidence. In an action of covenant it would require a less degree of proof, than as a deed sufficient to pass title to land. Thus it will be seen that to defeat a recovery under the deed would not defeat the right of recovery on it as a covenant.

It was also urged that the court erred in permitting Menard to testify that he gave Bailey notice at the time he executed the quit claim deed to him, that he had sold all the lands he had formerly owned in Pekin, and had no property at that time in the city. The object of this evidence was to defeat the title of plaintiff in error, by showing that he had notice at the time he purchased. He was incompetent to prove this fact to the same extent and for the same reasons that he could not prove the execution of his deed to Doolittle. We, therefore, deem the further discussion of this question unnecessary.

It is again urged that Menard was not liable on his covenants, because it appears that he had title at the time he entered into them. And that he could not become liable for a failure of title subsequently accruing. This would no doubt be true, if the title failed from the acts or omissions of the grantee or other parties; but it cannot surely be true, when the title has failed by the action of the grantor himself. He covenanted that he would forever warrant and defend the title against all claims and persons whomsoever. Now this must embrace any claim which he might assert,

31

or might transfer to any other person, by the assertion of which the title should be defeated. The operation of a covenant of this character surely cannot be so narrow, that because the grantor had title when the conveyance was made, that he may, in fraud of his covenant, wrongfully convey the property so as to defeat the title he had covenanted to defend. Nor could he with impunity defeat the title of the grantee and escape liability on his covenants, by disseizen or other wrongful or voluntary act. It can never be held, that after entering into such a covenant, that he may, in fraud of the rights of his grantee, defeat the title and escape liability on his covenants. The neglect of his grantee to record his deed does not authorize him to sell land which he has already conveyed, and for which he has received the pay, and obtain money therefor a second time. This would be too monstrous for a court to sanction.

It is likewise insisted that the terms of Menard's quit claim deed to Bailey do not embrace the lots in controversy. The language employed is this: "All lots, blocks, land and fractional blocks, or any interest therein, in the town of Pekin, county of Tazewell, and State of Illinois, that I have; also all my right and interest, or in anywise appertaining, together with the right of ways. This deed is intended to convey all the interest the said Peter Menard has in the town of Pekin, now city, in said county." The language used clearly manifests the intention of the grantor, to limit the operation of the conveyance to such lands as he then owned, and the title to which was still in him. Whilst a quit claim deed is as effectual to pass title as a deed of bargain and sale, still, it, like all other contracts and agreements, must be expounded and enforced according to the intention of the parties. In this deed, the intention of Menard appears to have been to sell such lands only as had not been conveyed by him to other parties previous to that time.

In the cases of *Brown* v. *Jackson*, 3 Wheat., 449, *McConnell* v. *Reed*, 4 Scam., 117, and *Butterfield* v. *Smith*, 11 Ill., 485, it was held that quit claim deeds, in which similar language

was used, did not operate to pass the title as against prior unrecorded deeds. That the deed limited the operation of the conveyance to land the grantor owned and had not previously conveyed, and that the grantee took the deed subject to the reservation and was bound by its terms.

The question then presents itself, whether Menard's insufficiently executed deed is embraced in the reservation. By fair construction, the language must be restricted to previous conveyances, legally executed, and operative as such. A conveyance void under the law, or even voidable, at the time of executing the subsequent conveyance could not be held to be embraced within the reservation. It not unfrequently happens, that the subsequent deed is designed to avoid a prior deed which the grantor has the legal right to avoid, and such conveyances are upheld as binding, and sufficient to pass the title. Again, the language should be restricted so as not to embrace any conveyance which is so imperfectly executed that the law will refuse to give it effect as a conveyance of title. If it has been so executed that it cannot be proved so as to be admitted in evidence as a conveyance, it cannot have effect, and cannot be held to constitute a conveyance. If for want of proof, or from other defect, it cannot be used in the assertion of the right to hold the title, it cannot be said to be a conveyance of the title to the land. In such a case, the legal title does not pass from the vendor, but remains in him at the time the subsequent conveyance is made, and falls fully within the operation of the language of such a deed. Holding the legal title at the time, it must be conveyed by the language—"This deed is intended to convey all the interest the said Peter Menard has in the town of Pekin." Owning the legal title at the time, it was an interest that passed by the conveyance to Bailey.

This view of the case renders it unnecessary to discuss the question of notice at this time. Until defendants in error shall establish a title by a legal conveyance, they are not in a position to call upon plaintiff in error to produce any evidence of title. The first step they were bound to take to

authorize a recovery was to show that Menard's title had passed to and vested in them. If unable to show that they have a remedy at law, they must, if they have any rights, be left to assert them in a court of equity, where the question of notice as well as all other equitable questions would be considered.

The judgment of the court below is reversed and the cause remanded.

*Judgment reversed.*