EDMUND FITZGERALD *vs.* ALMIRA A. LIBBY.

Middlesex.    March 4. — July 2, 1886.    W. ALLEN & HOLMES, JJ., absent.

A mortgage made by A. embraced four different parcels of land. Each of the first three parcels was described separately by a general description referring to the deeds, recorded in a certain registry, by which it was conveyed to him, with an exception of the lots embraced in such parcel which had been previously conveyed by the mortgagor. The fourth parcel was described as "the land by me owned" in a certain locality; "for boundaries and description reference is made to deeds to me recorded in said registry;" and the deed did not in terms except lots in this locality previously conveyed. In fact, the mortgagor had previously conveyed a portion of the fourth parcel by a deed which was not recorded until after the mortgage was recorded. *Held*, that such portion did not pass by the mortgage.

CONTRACT to recover $100, paid by the plaintiff to the defendant at a sale by auction of certain land, under a power of sale contained in a mortgage held by the defendant. Trial in the Superior Court, before *Knowlton,* J., who allowed a bill of exceptions, in substance as follows:

The land sold to the plaintiff is composed of lots 288 and 289 on a plan of a large tract of land formerly belonging to Daniel Ayer, and known as "Ayer's new city," said city being situate in Lowell, westerly of the Boston and Lowell Railroad, and southerly of the Chelmsford Road, so called.

The two lots were struck off to the plaintiff as the highest bidder at said auction, and the plaintiff, in accordance with the terms of sale, paid the defendant $100 at the time of the sale. The plaintiff afterwards refused to accept a deed, on the ground that the two lots in question were not included in the mortgage under which the defendant assumed to sell them.

The mortgage in question was executed by Daniel Ayer, on October 20, 1854, and was recorded on October 24, 1854. The lots conveyed were described as follows:

"All my Silver Lake land, so called, situate in Wilmington in said county, being all the land in said town bought by me of Charles F. Abbott by deed duly recorded in Middlesex registry, and also of one Jacob Manning, and also of one Jones and one Durgin, all adjoining and on a plan made by one Butterfield, and for further description reference is made to deeds of said several pieces duly recorded in said registry, saving and excepting a few lots thereof which I have already conveyed. Also all the land in said Wilmington by me purchased of one Jaques of Worcester, to which deed, duly recorded in said registry, reference is made for further description, except a few lots by me conveyed. For Manning deed, see Book 691, page 81. For Jaques, Book 688, page 96. See also other deeds in said registry. Also all those parcels of land situated in Wilmington, in said county of Middlesex, which were conveyed to me by James Holton by his deed dated June 7th, A. D. 1854, and recorded in the Middlesex county registry of deeds, Book 688, page 123 & 124, excepting certain parts thereof which I have heretofore sold and conveyed by my deeds. Reference may be had to said Holton's deed to me, and the record thereof, and of the deed of parts thereof given by me heretofore, for a full and perfect description of the premises. Also all the land by me owned and situate in my new city, so called, in said Lowell, being land situate in said Lowell westerly of Boston and Lowell Railroad, and southerly of the Chelmsford Road, so called; for

boundaries and description reference is made to deeds to me, recorded in said registry."

On January 6, 1852, Daniel Ayer conveyed lot 288, by a warranty deed, to David Corner. This deed was recorded on May 16, 1855. On January 6, 1852, Ayer also conveyed lot 289 to Lyman J. Sanborn. This deed was recorded on January 12, 1856.

The defendant contended that the description in the mortgage included, in legal effect, said two lots 288 and 289, and passed the same as against said prior deeds, and asked the judge so to rule. The judge ruled in accordance with this request, and ordered a verdict for the defendant. The plaintiff alleged exceptions.

*A. G. Lamson*, (*J. J. Hogan* with him,) for the plaintiff.

*G. F. Richardson & F. W. Qua*, for the defendant.

C. ALLEN, J. The only question is whether, by the true construction of the mortgage, lots 288 and 289 are to be deemed to have been included in the description of the land conveyed thereby. If they are, the plaintiff cannot recover. If they are not, his exceptions must be sustained. In determining this question, we must look at the whole of the mortgage, in the light of the circumstances under which it was given.

It embraces four different parcels, or clusters of parcels, of land. In respect to the first three of these, there is in each case a description of land, or a reference to deeds which are designated, sufficient to enable one to ascertain the boundaries of a larger quantity of land originally owned by the grantor, from which he had conveyed certain portions or lots to former purchasers. That is to say, the grantor, having bought in each case a large lot of land, and having sold portions thereof, then granted the residue by a mortgage in effect describing the whole of the large lot, and excepting therefrom such portions as he had already conveyed. By a somewhat cumbersome process, any one familiar with the premises could ascertain precisely what was intended to be included in the mortgage. In respect to the fourth parcel, however, the phraseology was changed, and the language of the conveyance is as follows: " Also all the land by me owned and situate in my new city, so called, in said Lowell, being land situate in said Lowell westerly of Boston and Lowell

Railroad, and southerly of the Chelmsford Road, so called; for boundaries and description reference is made to deeds to me recorded in said registry." No deeds are specifically designated, and there is no exception of lots already conveyed by him. In point of fact, it appears that there was a large tract of land in Lowell formerly belonging to Ayer, the grantor, and known as "Ayer's new city," which was the same "new city" mentioned in the mortgage, and the lots 288 and 289 were a part of said new city, and were shown on a plan of the whole tract, and had been sold by the grantor prior to the giving of the mortgage, by warranty deeds not recorded until after the mortgage was recorded. Whether or not other lots had also been sold by him does not appear in distinct terms. But it may be inferred that the large tract was either actually improved, or was designed to be improved, by laying it out into streets, and lots for sale.

The bill of exceptions is rather meagre in its facts. But, taking such facts and circumstances as we have, it seems to us that the change in the phraseology, when the fourth parcel was to be described, shows that the intention was to include only such land as the grantor then owned. There is no specific description of land, and no specific designation of deeds where a description can be found. The conveyance is a mortgage, and not an absolute deed. The reference to the source of the grantor's title is of the most general description: "for boundaries and descriptions reference is made to deeds to me recorded in said registry." This reference, while certainly entitled to some weight, is entitled to less than if it were more specific; and, in view of the whole instrument, it is not sufficient to lead to the conclusion that the grantor intended to convey all that was conveyed to him by those deeds. In all the earlier instances, where there was a definite exception of lots already conveyed away by the grantor which otherwise would form a part of the premises described, the description of the whole original tract was also more definite.

In this last instance, where, for some reason, the original tract is not described, the change of phraseology and the omission of such an exception support the inference that a similar result was intended to be reached, and that the grant was understood to be limited to such portion of the large tract as was then

owned by the grantor. It can hardly be supposed that he would intend to include in the mortgage land which he had already granted away to others. The grantee in the mortgage was fairly put upon inquiry. If he was content to accept a grant with so indefinite a description, he must take the risk. Otherwise, if the grantor had sold all of the large tract but two or three scattered lots, and then made a deed like the present for the purpose of conveying what was left, it would take effect in priority to any former deeds which might chance to remain unrecorded, thus working a practical fraud on the earlier grantees, and entirely subverting the grantor's intention. Where a conveyance is made with no particular description of the land, the words "all the land by me owned" are more naturally understood to mean "all the land now owned by me;" which is equivalent to "all the land which I have not heretofore conveyed;" and such, we think, is the true construction of the present mortgage.

We do not find that the case of *Woodward* v. *Sartwell*, 129 Mass. 210, which is principally relied on by the defendant, decides anything to the contrary of this; while the construction above given to the mortgage derives more or less support from numerous other decisions in this State and elsewhere. *Worthington* v. *Hylyer*, 4 Mass. 196. *Adams* v. *Cuddy*, 13 Pick. 460. *Sweet* v. *Brown*, 12 Met. 175. *Chaffin* v. *Chaffin*, 4 Gray, 280. *Hoxie* v. *Finney*, 16 Gray, 332. *Jamaica Pond Aqueduct* v. *Chandler*, 9 Allen, 159. *Mills* v. *Shepard*, 30 Conn. 98. *Brown* v. *Jackson*, 3 Wheat. 449. *Hamilton* v. *Doolittle*, 37 Ill. 473. *McConnel* v. *Reed*, 4 Scam. 117. *Starling* v. *Blair*, 4 Bibb, 288. *Morrell* v. *Fisher*, 4 Exch. 591.

For these reasons, in the opinion of a majority of the court, the entry must be,                     *Exceptions sustained.*