BOYNTON et al. v. HAGGART et al.

ROZELL et al. v. BOYNTON et al.

(Circuit Court of Appeals, Eighth Circuit. February 16, 1903.)

Nos. 1,679, 1,770.

1. REGISTRY STATUTES—ESTOPPEL FROM DENYING RECORD TITLE.
 Registry statutes are legislative extensions of the doctrine of estoppel. Their purpose and effect are to estop the holder of the actual title, evidenced by an unrecorded deed or decree, from denying that the title which appears of record is the real title.

2. SAME—AVAILABLE TO ONE HOLDING UNDER DEED OF WHAT THE GRANTOR OWNS.
 An innocent purchaser for value of the lands owned by his grantor in a certain state, without more definite description, may avail himself of a registry statute to estop the holders of the real title under a prior unrecorded decree or deed from asserting it against his claim to all the lands which his grantor appeared by the records to own when he made his purchase.

3. RECORDING ACT OF ARKANSAS—CONSTRUCTION.
 One of the statutes of Arkansas provides that, if a decree affecting the title to real estate is not registered in the recorder's office of the proper county within one year of its rendition, it shall be void as to all subsequent purchasers without notice. *Held*, the title of an innocent purchaser of land from the defendant in a decree that appeared by the record to be the owner thereof more than a year after the decree was rendered, and before it was recorded, is superior to the title of those in whose favor the decree was rendered, notwithstanding the fact that the

deed to the purchaser contained no detailed description of the land, but conveyed the right, title, and interest of the grantor in all the lands it owned in certain counties in the state of Arkansas.

**4. REGISTRY STATUTES—NOTICE TO PURCHASER UNDER WARRANTY DEED.**

A subsequent purchaser of lands conveyed to him by a warranty deed is not charged with notice under the registry statutes of unrecorded conveyances or decrees by the fact that some prior deed in the chain of title is a quitclaim deed or conveys only the lands which the grantor therein owned, or those which some bankrupt owned at the time of his adjudication, or those of which some apparent owner died seised. But the purchaser may safely rely upon the presumption that the record title is the real title.

**5. SAME—FACT THAT DEED TO PURCHASER IS FROM HIS AGENT IMMATERIAL.**

The fact that the purchaser takes his deed from his agent in the purchase, who obtained his title by a prior quitclaim deed from the vendor of the lands he owned in a certain county or state, does not deprive the purchaser of the benefit of this rule.

**6. SAME—DEED WHOSE PARTIES ARE NOT IN CHAIN OF TITLE—NOTICE.**

The record of a deed neither the grantors nor grantees of which appear in the recorded chain of title is no notice to a subsequent purchaser of any right or interest of any of the parties to such a deed in the land it describes.

**7. SWAMP-LAND GRANT TO ARKANSAS—GOVERNOR AND AUDITOR SPECIAL TRIBUNAL TO DETERMINE CLAIMS TO.**

The Auditor and Governor of the state of Arkansas constitute a quasi judicial tribunal empowered to hear and determine who are entitled to the swamp lands granted to that state by the act of Congress of September 28, 1850 (9 Stat. 519), and to execute their judgments by issuing patents or deeds of the state to the parties that they find entitled to them.

**8. SAME—PATENT CONCLUSIVE EXCEPT AGAINST DIRECT ATTACK.**

The patent of the state to such lands is impervious to collateral attack, and conclusive evidence of title, except in a direct proceeding in equity to avoid it for fraud or gross mistake.

**9. ESTOPPEL BY DEED.**

An estoppel by the subsequent judgment of a competent tribunal prevails over a prior estoppel by the covenants of a deed.

**10. LACHES—LIMITATION AT LAW.**

Under ordinary circumstances a suit in equity will not be stayed for laches before, and will be stayed after, the time fixed for the commencement of the analogous action at law.

When a suit is brought within the time fixed by the analogous statute, the burden is on the defendant to show, either from the face of the bill or by the answer, that circumstances exist which require the application of the doctrine of laches.

When the suit in equity is brought after the analogous statutory time, the burden is on the complainant to plead in his bill and to establish by proof the existence of unusual facts and circumstances which make it inequitable to apply the doctrine of laches to his case.

**11. SAME—FACTS.**

The cause of action in equity to avoid a patent accrued 32 years before the interveners sought relief. The analogous limitation at law was five years. The interveners neither pleaded nor proved any excuse for the delay, and an innocent purchaser had bought the land in reliance upon the patent.

*Held,* the interveners were estopped from securing relief in equity by their laches.

(Syllabus by the Court.)

Appeals from the Circuit Court of the United States for the Eastern District of Arkansas.

Charles T. Coleman (W. J. Driver and John M. Rose, on the brief), for appellants Lucetta B. Boynton and others.

S. S. Semmes and Allen Hughes, for appellants L. D. Rozell and others.

N. W. Norton, for appellees James Haggart and others.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

SANBORN, Circuit Judge. These appeals present controversies between three sets of claimants to the title to certain timber lands in the state of Arkansas. Lucetta B. Boynton and her associates, the complainants below, are the devisees under the will of C. O. Boynton, deceased, who brought this suit against James Haggart and William McMasters, hereafter called the "defendants," to quiet in himself the title to about 20,000 acres of land which he bought of the Citizens' Bank of Louisiana in the year 1883. L. D. Rozell and his associates, the heirs of A. B. Rozell, deceased, intervened in this suit, and claimed the title to a portion of these lands. There was a hearing and a decree for the defendants, which the complainants and the interveners challenge by separate appeals.

The principal question which the appeal of the complainants presents is whether or not an innocent purchaser under a deed of all the right, title, and interest in the lands owned by his grantor in a certain state, without a more definite description, may successfully hold the lands which his grantor appeared by the registry to own when he made this deed as against a claimant under a prior unrecorded conveyance of the same lands by the same grantor. The question arises in this way: From 1873 until October 26, 1883, the records of the counties in which these lands were situated disclosed a complete chain of title to them from D. C. Cross, the grantee of the state of Arkansas, to the Citizens' Bank of Louisiana. On May 3, 1880, however, a decree had been rendered in one of the courts of the state of Arkansas in a suit between the executor, the executrix, and the devisees of the will of Jeptha Fowlkes, complainants, and the Citizens' Bank of Louisiana, defendant, to the effect that the heirs of Jeptha Fowlkes were the owners of this land, and that the bank had no title or interest in it. One of the statutes of the state of Arkansas required those in whose favor such a decree was rendered to register it in the recorder's office of the county in which the lands it affected were situated within one year after its rendition, and provided that, "if such decree be not recorded within such time, it shall be void as to all subsequent purchasers without notice." Gould's Digest of the Laws of Arkansas, p. 637, § 35. This decree was not recorded until November 4, 1884. Meanwhile, and in the year 1883, W. L. Culbertson, the agent and associate of C. O. Boynton, without any notice of this decree, purchased the lands in controversy in this suit from the Citizens' Bank of Louisiana, paid that bank $13,000 therefor, and took and recorded a quitclaim deed from it to himself of "all and singular its right, title, interest, and claim of whatever nature, legal and equitable, in and to all the lands, lots, and parcels of land and any and all interests in the same belonging to and owned by

said Citizens' Bank of Louisiana, in the state of Arkansas, at the date of this conveyance (except its lands and interests in Chicot county in said state); the said lands and interests herein conveyed being situated and lying within the counties of Clay, Crittenden, Craighead, Cross, Greene, Mississippi, Poinsett, and Woodruff, in the said state of Arkansas; and this conveyance to operate and be as absolute full and complete as if the said lands and interests aforesaid were herein specifically described." Before making this purchase, Culbertson procured a list of these lands, and an abstract of the recorded title to them, from which it appeared that the bank had a perfect record title to them, subject only to a tax title, which Culbertson bought at the same time that he purchased the lands from the bank. He secured his deed from the bank on September 26, 1883, and recorded it on October 26, 1883. C. O. Boynton, his principal, furnished the money to make this purchase, and on October 23, 1883, Culbertson conveyed the lands in controversy in this suit to Boynton by means of a warranty deed which describes them by government subdivisions, and this deed was recorded on October 29, 1883. Culbertson appears to have been interested with Boynton in the purchase of the lands, but what his interest was does not appear. The title of the complainants rests upon the purchase from the bank and the conveyance to Boynton while he was ignorant of the existence of the decree. The defendants have succeeded to the title of the heirs of Fowlkes under their decree against the bank of May 3, 1880, and the question is whether that title or that of the devisees of Boynton should prevail.

Counsel for the defendants argue that the deed from the bank to Culbertson conveyed only the lands which the bank owned at the date of the deed, and that, as the title to the lands here in question had been devested from the bank before the deed to Culbertson was made by the decree of May 3, 1880, and as the bank did not in fact own any right, title, or interest in the lands when it made this deed, the deed conveyed nothing, and the purchasers took nothing thereby. In support of this contention they cite Brown v. Jackson, 3 Wheat. 449, 4 L. Ed. 432. That was the first of a long line of decisions rendered by the Supreme Court in which it held that the grantee in a quitclaim deed could not become a bona fide purchaser under the registry statutes because the prior deed had conveyed all that the grantor had, and the form of the quitclaim deed was notice of that fact to its grantee. Oliver v. Piatt, 3 How. 333, 11 L. Ed. 622; Van Rensselaer v. Kearney, 11 How. 297, 13 L. Ed. 703; May v. Le Claire, 11 Wall. 217, 20 L. Ed. 50; Villa v. Rodriguez, 12 Wall. 323, 20 L. Ed. 406; Dickerson v. Colgrove, 100 U. S. 578, 25 L. Ed. 618; Baker v. Humphrey, 101 U. S. 494, 25 L. Ed. 1065; Hanrick v. Patrick, 119 U. S. 156, 7 Sup. Ct. 147, 30 L. Ed. 396. Counsel for the interveners cite the cases of Adams v. Cuddy, 13 Pick. 460, 25 Am. Dec. 330; Jamaica Corporation v. Chandler, 9 Allen, 159, 169; Chaffin v. Chaffin, 4 Gray, 280; Fitzgerald v. Libby, 142 Mass. 235, 7 N. E. 917; and Eaton v. Trowbridge, 38 Mich. 454, in support of the position of the defendants. But these decisions fail to give any adequate effect or force to the estoppel of the registry

statutes, and are in accord with the early holdings of the Supreme Court regarding the effect of a quitclaim deed. The riper experience and more thoughtful consideration of later years have exploded the fallacy upon which the earlier decisions of the Supreme Court rested, and have led that court to adopt the rule which has now become firmly established both upon reason and authority that the innocent purchaser under a quitclaim deed may acquire the title under the registry statutes as against the holder of a prior unrecorded deed from the same grantor notwithstanding the fact that the latter had no title, and had nothing to convey when he executed his second deed. Moelle v. Sherwood, 148 U. S. 21, 29, 30, 13 Sup. Ct. 426, 37 L. Ed. 350; United States v. California, etc., Land Co., 148 U. S. 31, 47, 48, 13 Sup. Ct. 458, 37 L. Ed. 354; Prentice v. Duluth Forwarding Co., 58 Fed. 437, 447, 7 C. C. A. 293, 303; Memphis Land & Timber Co. v. Ford, 58 Fed. 452, 7 C. C. A. 304.

No reason is perceived why the case at bar should not be governed by this just and salutary rule. Registry statutes are legislative extensions of the doctrine of estoppel. They forbid those who have, and yet withhold from the record, their muniments of title, from asserting the title those muniments disclose against others who have innocently purchased the land from him who appears by the record to be the owner while the holders of the real title silently conceal it. They rest upon and enforce the equitable proposition that he who knowingly conceals his ownership when he ought to disclose it shall not assert it to the detriment of his neighbor who has acted in reliance upon his silence. When Culbertson purchased these lands, the record disclosed a perfect title to them in the bank. That record was evidence of title both in the courts of the land and in the ordinary commercial transactions of men. Gould's Digest, p. 268, § 26. The agent of the vendor, the bank, furnished to the purchaser a list of these lands, and offered to sell them to him for his principal. Culbertson took the list, procured an abstract of the record title to the lands it described, and bought them in reliance upon the representation which the record and the silence and inaction of the grantors of the defendants exhibited. The defendants, or those under whom they claim, in violation of the statute, which required them to record the decree of May 3, 1880, which had devested the title of the bank, silently withheld it from the record, and thereby induced, or at least permitted, Culbertson and Boynton to buy from one who had no actual title. May they now be allowed to avail themselves of that decree, to deprive these vendees of the land, and to entail upon them the loss of their purchase money? The question is answered by the salutary statute of Arkansas. It declares that, if such a decree is not recorded within one year after its rendition, "it shall be void as to all subsequent purchasers without notice." The evidence is satisfactory—nay, it is conclusive—that Culbertson and Boynton were subsequent purchasers of these lands without notice of this decree, and they fall far within both the reason and the terms of the statute whose protection they invoke.

It is true, as counsel insist, that, in the absence of the estoppel of the registry statutes, a conveyance of what one owns carries nothing

which he does not own, and that under that rule the deed to Culbertson conveyed nothing, because the bank had nothing when it was made. But the question here is not what the bank owned when that deed was made. It is not what the bank could convey. It is what the bank appeared to own by the authorized records of the counties in which these lands were situated. The statute and the negligence of the defendants, or of their grantors, estop them from proving, or from successfully claiming, that the title to these lands was other than that which they permitted it to appear to be upon these records when Culbertson and Boynton bought. The contention that the grantor had nothing when this deed was made, and hence that the purchasers acquired nothing by it, proves too much. It applies with equal cogency to the purchaser under every deed subsequent to a prior unrecorded conveyance, and its adoption would annul every statute of registration, for it may be said with equal truth of every such subsequent conveyance that the grantor has nothing when he makes it, and therefore the subsequent purchaser can take nothing. The argument is fallacious, because it utterly ignores the purpose, the policy, and the effect of the statutes of registration. It is the purpose and the legal effect of these statutes to make the title that appears of record—the record title—superior in the hands of an innocent purchaser for value to the real title that is withheld from registration. Hence, while one who has parted with his title to land by an unrecorded deed or decree has no title or interest remaining in himself, yet his deed to an innocent purchaser for value, by virtue of the registry statutes, avoids the effect of the prior unrecorded deed or decree, and vests the title to the land in the subsequent purchaser to the same extent as it would have done if the title of record had been the real title. The holders of unrecorded instruments are estopped by the statute and their negligence from denying that the record title is the real title. Memphis Land & Timber Co. v. Ford, 58 Fed. 452, 455, 456, 7 C. C. A. 304, 307, 308. The defendants cannot be heard to say, as against Culbertson, Boynton, and their successors in interest, that the Citizens' Bank of Louisiana was not the owner of the lands which it appeared by the records of the counties to be the owner of when Culbertson and Boynton made their purchase.

There is another reason why the title of the complainants must prevail. Boynton was not only an innocent purchaser of these lands, but he secured them in October, 1883, by means of a warranty deed from Culbertson, which properly described and conveyed them to him by government subdivisions. If Culbertson could not have claimed the benefit of the estoppel of the registry statute because the deed to him did not specifically describe the lands, Boynton was under no such disability. Even in those courts in which the rule once prevailed that one who takes under a quitclaim deed cannot be a bona fide purchaser, that rule was sometimes limited to the grantee in such a deed. It did not apply to those who succeeded to the title of such a grantee by deeds of bargain and sale or by warranty deeds, and this was a reasonable limitation. Snowden v. Tyler, 21 Neb. 199, 31 N. W. 661; United States v. California, etc., Land Co., 148

U. S. 31, 47, 13 Sup. Ct. 458, 37 L. Ed. 354. The form of the deed to Culbertson, his grantor, did not charge Boynton with notice of the unrecorded decree against the bank, or of any other defect in its title, even if it could have charged Culbertson. A subsequent purchaser of lands properly described in a warranty deed to himself is not charged with notice of unrecorded conveyances or decrees by the fact that some prior deed in the chain of title is a quitclaim deed, or conveys only the lands which the grantor then owned, or of which some apparent owner died seised; or which some bankrupt owned at the time of his adjudication, but he may safely rely upon the presumption that the record title is the real title. Memphis Land & Timber Co. v. Ford, 58 Fed. 452, 455, 456, 7 C. C. A. 304, 307, 308; United States v. California, etc., Land Co., 148 U. S. 31, 46, 47, 13 Sup. Ct. 458, 37 L. Ed. 354; Kennedy v. Northup, 15 Ill. 148, 157; Bowen v. Prout, 52 Ill. 354, 357; Youngblood v. Vastine, 46 Mo. 239, 242, 2 Am. Rep. 509; Powers v. McFerran, 2 Serg. & R. 44, 47; Earle v. Fiske, 103 Mass. 491, 494.

The suggestion of counsel for the defendants that this rule is inapplicable in the case at bar because Culbertson was the agent of Boynton, and the form of the deed from the bank to him, which evidenced the real transaction, ought to control, and to charge Boynton with notice, has not been overlooked. But this contention ought not to prevail, because the rule which counsel seek to apply to this purchaser was, when it prevailed, arbitrary, technical, and unjust, and it ought not to be extended beyond its exact limits where it is applied at all. In United States v. California, etc., Land Co., 148 U. S. 31, 46, 47, 13 Sup. Ct. 458, 37 L. Ed. 354, the deed from the vendor to its agent was a quitclaim deed, while the deed from the agent of the vendor to the vendee was a warranty deed, and the Supreme Court held that the fact that the agent of the vendor was a mere conduit to transfer the title would not deprive the purchasers of the benefit of the limitation of the rule that they were not chargeable with notice of unrecorded conveyances by a quitclaim deed to their grantor. If the rule were to be applied, this limitation, in our opinion, would not be inapplicable in this case, and an innocent purchaser for value, who holds under a warranty deed from his agent which properly describes the land, ought not to be charged with notice of unrecorded conveyances or decrees by the fact that the deed to his agent was a quitclaim deed, or by the fact that that deed by its terms conveyed only the lands which the grantor owned in a certain state or county.

The rules and principles to which reference has now been made practically dispose of the issue between the complainants and the defendants. The record of the deed from the heirs of Fowlkes to Allen in the year 1882, which appears in the defendants' chain of title, constituted no notice to Boynton of any title or interest in either of the parties to that deed, because the decree had not then been recorded, and neither the grantors nor the grantee in that deed appeared from the record to have any interest in the title to the lands. The record of a deed neither the grantors nor the grantees of which appear in the recorded chain of title is no notice to any subsequent purchaser of any right or interest of any of the parties to such a deed in the land

it describes. Huber v. Bossart, 70 Iowa, 718, 722, 29 N. W. 608; Tarbell v. West, 86 N. Y. 280; De Yampert v. Brown, 28 Ark. 166; Traphagen v. Irwin, 18 Neb. 195, 24 N. W. 684.

The title, independent of the heirs of Fowlkes, which the defendants claim to some of the lands in controversy through the deed from D. C. Cross to the Iron Mountain & Helena Railroad Company, dated June 7, 1871, fails, because these lands were then subject to the lien of the judgment of the bank against Cross, which was subsequently enforced by the marshal's sale to the bank under the execution upon that judgment. The result is that Boynton was a subsequent purchaser, without notice, of the lands in controversy in this suit, more than a year after the decree against the bank was rendered, and before it was recorded. That decree was void as to him, and the title of his devisees must prevail over the claim which the defendants derived from the heirs of Fowlkes.

We turn to the claim of the interveners. It will be borne in mind that the complainants' chain of title is a patent or deed from the state of Arkansas to D. C. Cross, made in 1866; a marshal's deed to the bank on April 12, 1873, made in execution of a judgment against Cross rendered and docketed in 1868; a deed from the bank to Culbertson, dated September 26, 1883, and recorded October 26, 1883; and a deed from Culbertson to Boynton, dated October 23, 1883, and recorded on October 29, 1883. The interveners are the heirs of A. B. Rozell, and they claim a portion of the lands conveyed to Boynton upon this state of facts: These lands were a part of the swamp-land grant of September 28, 1850 (9 Stat. 519), to the state of Arkansas. They were entered by George W. Underhill in the office of the proper official of the state of Arkansas in 1852. On February 14, 1855, Jeptha Fowlkes conveyed the lands which the interveners claim by a warranty deed to A. B. Rozell. That deed was properly recorded in February, 1855, and the claim of the interveners is based upon it. The statutes of the state of Arkansas provided that upon the presentation of certificates of entry of swamp lands to the land agent of the state he should issue patent certificates to the land to the last assignee of the certificates of entry; that the Governor of the state should issue deeds upon such patent certificates; and that full title in fee should vest in the assignee to whom such deeds were issued as effectually as if he had been the original purchaser or locator of the land. Gould's Digest, p. 730, § 37. On June 7, 1855, about four months after Fowlkes' deed to Rozell, the agent of the state of Arkansas issued to Jeptha Fowlkes a patent certificate to these lands. The statute of Arkansas farther provided (1) that it was the duty of the Auditor of the state, upon receiving proof deemed sufficient by him of the loss of any certificate, to issue a duplicate certificate reciting the fact that this duplicate was given by him in lieu of a certificate proved to be lost; (2) that such duplicate should be deemed, taken, and considered for all and every purpose whatever as in lieu and cancellation of the original certificate; and (3) that the Governor of the state was authorized to issue upon such a duplicate certificate a patent to the holder thereof for the lands therein described. Id., p. 731, §§ 42, 44. On December 1, 1866, the Auditor of the state of

Arkansas issued under these statutes to D. C. Cross a duplicate certificate of these lands, which recited that it was issued in lieu of the certificate which Jeptha Fowlkes had obtained on the 7th day of June, 1855, which had been assigned to D. C. Cross, and had subsequently been lost by him. Thereupon the Governor of the state issued to D. C. Cross upon this certificate a patent or deed of these lands from the state of Arkansas to D. C. Cross.

Now, the claim of the interveners is that the interest which Jeptha Fowlkes acquired by the assignment of Underhill's entry and the issue of the patent certificate to him on June 7, 1855, passed to their intestate, A. B. Rozell, instantly upon its acquisition by Fowlkes by virtue of the covenants in his warranty deed of February 14, 1855, so that their title under that deed is superior to the title of the complainants. At the threshold of the discussion of this contention it is conceded that under this warranty deed as against Fowlkes and those claiming under him with notice of its existence whatever title or interest Fowlkes acquired in these lands passed to Rozell, the grantee therein, by virtue of the covenants of warranty. But it does not follow from this concession that the title of the heirs of Rozell is superior either in law or in equity to the title of the complainants. The only basis for their claim to these lands which the interveners pleaded or suggested in their petition was that by the decree of May 3, 1880, the title of the bank had been devested, and restored to the heirs of Fowlkes, and that under that decree and the warranty deed to their intestate they had succeeded to that title. But the heirs of Rozell are estopped from deriving any benefit from that decree for the same reason that the defendants are, because Boynton was a subsequent innocent purchaser for value more than a year after the decree was rendered and before it was recorded, so that it was void as to him. To the contention that the record of the deed from Jeptha Fowlkes to A. B. Rozell charged Boynton with notice of the title or interest of the interveners or their intestate the answer is that neither the grantor nor the grantee in that deed appeared in the recorded chain of title, and for that reason it constituted no constructive notice to a subsequent innocent purchaser.

This brief reference to the pleaded claim of the interveners completely disposes of the only question which they made by their petition, or which, so far as the record discloses, they presented to the court below at the hearing, and we might well close the discussion of their pretensions here. In this court, however, their counsel insist that their title may be sustained in preference to that of the complainants, independent of the decree of May 3, 1880, because the title of Fowlkes passed to their intestate before Fowlkes sought to assign it to Cross, so that neither Cross nor any one claiming under him ever acquired any title to the property; and a few moments will be devoted to a statement of the reasons why, in our opinion, this position cannot be sustained. If Jeptha Fowlkes had acquired the legal title to this land, instead of the equitable title, and if Boynton had received either actual or constructive notice of the warranty deed to Rozell before he purchased, their proposition would be unanswerable. But Fowlkes never had the legal title. That title was in the United States,

or in the state of Arkansas, until that state conveyed it to Cross. Fowlkes never had, and Rozell never acquired by the deed to him, more than the equitable title—the right, subject to the decision of the Auditor, the Governor, and the courts, to acquire the legal title by a patent from the state or by a decree of a court, if the Auditor, the Governor, or the court should be of the opinion that they, or either of them, were entitled to such a title. Now, the Legislature of Arkansas lawfully constituted the Auditor and the Governor of that state a quasi judicial tribunal to hear and determine the question who was entitled to the legal title to this land—to the patent or deed of it from the state. Neither Rozell nor his heirs ever applied or asked for this patent or deed before this suit was instituted in the year 1899. In 1866—11 years after Rozell obtained his warranty deed and whatever interest he acquired from Fowlkes—Cross applied to the Auditor and the Governor, the proper tribunal, for the legal title and the patent of the state to this land, and that tribunal decided that he was the assignee of Fowlkes, that he had lost his certificate, and that he was entitled to a duplicate certificate, and to the legal title and the patent of the land from the state, and they issued the patent to him. The heirs of Rozell now claim for the first time in this suit—more than 32 years after the issue of this patent, and more than 12 years after Boynton has brought and paid for these lands in reliance upon that patent—that the duplicate certificate and the patent were obtained by the fraud and misrepresentation of Cross, were wrongfully issued by the Auditor and the Governor of the state, and that they are ineffectual to convey any title to Cross or to his grantees, because they were privies in estate with Fowlkes, and bound by his covenants of warranty to Rozell. But the Auditor and the Governor constituted a quasi judicial tribunal, under the statutes of the state of Arkansas, vested with the power and charged with the duty to hear and determine the question who was entitled to the legal title to these lands, and to execute its judgment by the issue of a patent conveying it. The Auditor and Governor heard and determined this question. They decided that Cross was entitled to the title and the patent, and they issued it to Cross. That patent conveyed the legal title. Like the decisions of other judicial tribunals, the judgment of the Auditor and Governor upon this matter, which was committed to their jurisdiction, was impervious to collateral attack, and it estopped every one claiming the land from asserting any title to it derived from the state of Arkansas until by direct proceeding in equity the effect of this patent was avoided. King v. McAndrews, 111 Fed. 860, 864, 873, 50 C. C. A. 29, 32, 41; Minter v. Crommelin, 18 How. 87, 89, 15 L. Ed. 279; U. S. v. Schurz, 102 U. S. 378, 401, 26 L. Ed. 167; Moore v. Robbins, 96 U. S. 530, 533, 24 L. Ed. 848; French v. Fyan, 93 U. S. 169, 172, 23 L. Ed. 812; Quinby v. Conlan, 104 U. S. 420, 26 L. Ed. 800; Refining Co. v. Kemp, 104 U. S. 636, 645-647, 26 L. Ed. 875; Steel v. Refining Co., 106 U. S. 447, 450, 452, 1 Sup. Ct. 389, 27 L. Ed. 226; Lee v. Johnson, 116 U. S. 48, 49, 6 Sup. Ct. 249, 29 L. Ed. 570; Heath v. Wallace, 138 U. S. 573, 585, 11 Sup. Ct. 380, 34 L. Ed. 1063; Knight v. Association,

142 U. S. 161, 212, 12 Sup. Ct. 258, 35 L. Ed. 974; Noble v. Railroad Co., 147 U. S. 174, 13 Sup. Ct. 271, 37 L. Ed. 123; Barden v. Railroad Co., 154 U. S. 288, 327, 14 Sup. Ct. 1030, 38 L. Ed. 992. This judgment of the Auditor and Governor is a complete answer to the asserted estoppel of the covenants of warranty in the deed of Rozell. The estoppel by that deed is met by the estoppel of the judgment of the special tribunal authorized to adjudicate the question whether or not Cross was the owner of the title, and the latter estoppel prevails. An estoppel by the subsequent judgment of a competent tribunal prevails over a prior estoppel by deed.

Notwithstanding the presumptive validity of this patent and its imperviousness to collateral attack, Rozell and his heirs were not remediless, if, as their counsel now claim, the patent was issued upon a misapprehension of the facts, which was induced by fraud or mistake. They might have pleaded the facts which constituted this fraud or induced this mistake in a court of equity, and such a court, if they proved their averments, would have avoided the patent, or decreed that the owner of the title under it held it in trust for, and should convey it to, Rozell or his heirs. King v. McAndrews, 111 Fed. 860, 864, 865, 50 C. C. A. 29, 33, and cases there cited. It is only upon this ground that this court or the court below has any jurisdiction to grant any relief to the interveners in this suit under the established rules and principles of the law to which we have adverted, and there are two conclusive reasons why they are entitled to no relief upon this ground. The first is that they have not pleaded or proved the facts constituting the fraud or inducing the mistake which they now claim caused the issue of the patent to Cross. Indeed, they have not even pleaded that there was any such fraud or mistake. This seems to be an afterthought, presented in argument in this court, and it cannot prevail, because the decision of a question of fact by a special tribunal authorized to hear and determine it is conclusive even in a direct proceeding to avoid a patent based upon it, unless it is first made to appear clearly by pleading and proof that its action was induced by a gross mistake or by fraudulent practices. There is no general appeal from the decision of the Auditor and Governor of Arkansas determining who is entitled to patents from the state to swamp lands to the state or to the federal courts. U. S. v. Northern Pacific Railroad Co., 95 Fed. 864, 870, 37 C. C. A. 290, 295, 296; James v. Germania Iron Co., 107 Fed. 597, 617, 46 C. C. A. 476, 497.

The second reason why the interveners are entitled to no relief against this patent is that they are estopped from securing it by their own laches. When, in 1866, this conveyance by the state of Arkansas to Cross was made, a cause of action to set it aside and to secure a decree that the title under it was held by Cross in trust for, and that it should be conveyed to, Rozell, immediately accrued to the latter. He lived until 1884, and one of his heirs—one of the interveners, his son L. D. Rozell—was aware that his father had a claim to this land before the latter died. Yet no suit was brought or action taken to enforce this claim until this petition in intervention was filed in 1899. The statutes of the state of Ar-

kansas provide that suits of this nature must be commenced within five years after the cause of action accrued. Sandels & Hill's Digest, §§ 4832, 4822. While courts of equity are not bound by, they ordinarily act or refuse to act in analogy to, the statutes of limitations relating to actions at law of like character. When a suit is brought after the time fixed by the analogous statute, the burden is on the complainant to plead and prove that it would be inequitable to apply it to his case, and when a suit is brought within the statutory time for the analogous action at law, the burden is on the defendant to show either from the face of the bill or by his answer that extraordinary circumstances exist, which require the immediate application of the doctrine of laches. Kelley v. Boettcher, 85 Fed. 55, 62, 29 C. C. A. 14, 21. The action at law analogous to the petition to avoid this patent to Cross was barred under the statutes of Arkansas in 1871. The fact that many of the heirs of Rozell were not until 1899 aware that either they or their intestate ever had any claim to or interest in this land, which appears in the record, furnishes no excuse for the fatal delay in bringing this suit, because the time for its commencement began to run 17 years before A. B. Rozell died, it expired 12 years before he died, and his son L. D. Rozell, one of the interveners, was aware of his claim before the decease of his father. The record contains neither pleading nor proof of any facts or circumstances which make it inequitable to apply the doctrine of laches to the case of the interveners by analogy with the corresponding statute of limitations at law according to the ordinary rule of practice, while the facts that these interveners and their intestate allowed the patent to Cross to stand unchallenged for 32 years, and permitted the devisee of the complainants to purchase and pay $13,000 for the lands it described in reliance upon its validity, and without notice of any claim of any defect in it, make it unconscionable and unjust to depart from the ordinary rule. Wagner v. Baird, 7 How. 234, 12 L. Ed. 681; Godden v. Kimmell, 99 U. S. 201, 25 L. Ed. 431; Wood v. Carpenter, 101 U. S. 135, 25 L. Ed. 807; Rugan v. Sabin, 53 Fed. 415, 420, 3 C. C. A. 578, 582.

The decree of the Circuit Court is reversed, and the case is remanded to that court, with instructions to enter a decree quieting the title to the lands in controversy in the complainants against both the defendants and the interveners, and making equitable provisions for the payment by the complainants to the defendants Haggart and McMasters of the taxes, which, according to the stipulation contained in the record, they, and those under whom they claim, have paid upon these lands, together with the interest thereon, and for the payment of the costs by the proper parties in accordance with the views expressed and the decree indicated in this opinion. Let the appellants recover costs in No. 1,679, and the appellees, the devisees of C. O. Boynton, in No. 1,770, in this court.