Mr. Justice SWAYNE
 

 delivered the opinion of the court.
 

 This is an appeal in equity from the decree of the Circuit Court of the United States for the District of Iowa. The record is in a singularly defective and confused condition. But the case has been fully argued upon the merits by the counsel upon both sides, and finding enough in the record, upon looking carefully through it, to enable us to dispose of the controversy between the parties satisfactorily to ourselves without further delay, we do not deem it necessary to reverse and remand the cause, as we might otherwise do, in order that the record may be corrected and by a further appeal be brought up in the proper condition.
 
 *
 

 
 *228
 
 The ease involves no legal question of any doubt or difficulty. Its determination depends wholly upon the facts. The testimony and exhibits are very voluminous. It could serve no useful purpose elaborately to analyze them and set forth the results in this opinion.
 
 We
 
 shall content ourselves with doing little more than to announce our conclusions. ¥e shall not deem it necessary to give in detail the evidence upon which they are founded or the processes-of argument by which they are supported.
 

 The proposition submitted by May, of the 4th of February, 1859, its acceptance on the 8th of March following by Le Claire, since deceased, and the assent of May on the same day, constituted a valid contract. There -was a large difference in value between what Le Claire was to give and what he was to receive. But we have found in the record nothing which raises a doubt that the arrangement was fair and just to both parties. Le Claire was a man of property and of experience in business. The date of the proposition and of its acceptance show that he took ample time to consider the subject. The acceptance was witnessed by John P. Cook, his counsel, and one of the defendants in this case. According to the face of the proposition it involved the settlement of unadjusted demands on both sides. It was made in a spirit of peace and compromise, and was accepted in a corresponding spirit. It is the duty of a court of equity to uphold such an agreement, to protect and enforce the rights of both parties under it, and to carry it out as far as the •facts, which subsequently occurred, and the settled principles of our jurisprudence, will permit.
 

 On the 10th of March Le Claire,'in pursuance of the contract, indorsed to May the notes and mortgage of Adrian H. Davenport, and placed them, with certain collaterals which-he had received from Davenport to secure the payment of the notes, in the hands of Cook & Sargent. At the same time May, also, in pursuance of the contract, executed to Le Claire, a deed conveying the Rosebank farm, and placed it in the hands of the same depositaries. Cook & Sargent were to deliver to each party what the other had deposited
 
 *229
 
 for ljim as soon as May should have removed all incumbrances from the farm, which he was bound by the contract
 
 to
 
 do within a year from its date. When Le Claire made, his deposit he took from Cook & Sargent a receipt stating its object and terms.
 

 The firm of Cook & Sargent consisted of John P. Cook, Ebenezer Cook, his brother, and George B. Sargent. They were bankers. On the 21st of August, 1858, they executed to Le Claire a mortgage upon a large quantity of real estate. The consideration stated is $70,000. The mortgage recites that Le Claire had “ accepted various sums for the accommodation of Cook & Sargent, and proposes to indorse and accept other and further sums for them, with the view of enabling them to borrow money on such acceptances.” The condition was that they should pay these liabilities and save Le Claire harmless. Cook & Sargent subsequently failed/ On the 22d of December, 1859, they sold and assigned to Le Claire the banking-house of Cook, Sargent, Downey & Co., in Iowa City, and all the assets, real, personal, and mixed, of that firm. The consideration stated is, that Le Claire “ has made and-executed certain notes, drafts, and acceptances for the accommodation of Cook & Sargent, and is now liable to pay the same.” No condition or trust is expressed. On the 12th of December, 1860, Cook & Sargent assigned to the defendant, George L. Davenport, their interest in the assets of the firm of Cook, Sargent & Parker, of Florence, in the Territory of Nebraska, and covenanted that the interest thus transferred was worth the sum of $15,000. On the 2d of July, 1861, by a deed, absolute on its face, Le Claire conveyed to the defendant, Louis C. Dessaint, a large number of tracts of land. On the 15th of the same month an article of agreement was entered into between them, wherein it was.recited that the prior conveyance had been made in trust to enable Dessaint to sell and pay a debt of Le Claire to the Merchants’ Branch of the State Bank of Iowa, and Dessaint stipulated that, after accomplishing this object and paying the expenses of the trust, he -would reconvey the residue of the lands to Le Claire. These transactions show
 
 *230
 
 the relations of the parties at the dates of their occurrence, and in that view are not without importance in this case.
 

 The incumbrances on the Eosebank farm consisted of a deed of trust, executed by May to Charles Powers, since deceased, to secure a note of May to "W. H. & A. T. Strippel, for $6550, payable, with interest, on the 1st of May, 1858; a mortgage to George F. Kettle to secure a note of May to him of $3125, with interest after due, payable on the 10th of November, 1857; and the liens of several judgments not necessai’y to bé particularly specified. At the time the contract between May and Le Claire was entered into, Le Claire Was well satisfied with the arrangement. Subsequently he became dissatisfied. Joh'u P. Cook afterwards denounced it, and-declared that, as the friend and attorney of Le Claire, he considered it his duty “ to protect Le Claire as far as possible against so gross an imposition.” The most obvious and effectual way to accomplish that object was to sell the Eosebank farm under the deed of trust, and thus put it out of the power of May to fulfil his part of the contract, and this purpose those concerned in the scheme proceeded to carry out.
 

 In this connection we lay out of view the important declarations of Powers, the trustee, as incompetent against the other parties.
 

 On the 12th of April, 1859, Adrian H. Davenport, regarding May as the owner of his notes and mortgage, which Le Claire had assigned and deposited, as before stated, submitted to May a written offer for a settlement and compromise, which May declined.
 

 On the 28th of July, 1859, John P. Cook bought from Powers the note and mortgage of May to Kettle, and gave in payment his note for $3255.87, indorsed by Le Claire and Ebenezer Cook. Cook, the assignee, sued May on the note in the Circuit Court of the United States for the Northern District of Illinois and recovered a judgment.
 

 The day after May executed his deed to Le Claire he delivered possession of the Eosebank farm to Le Claire, and
 
 *231
 
 has not since had possession or any control over the premises, or any benefit from them.
 

 On the 20th of July, 1859, Powers, the trustee, sold this property under the deed of trust. The evidence leaves no doubt in our minds that his conduct in making the sale was grossly fraudulent. He knew that May had arranged for funds more than sufficient to discharge the debt due to his
 
 cestui que
 
 trusts,. which were ready to be paid over as soon as May could deliver to the lender, as security, two of the notes of Davenport.
 
 We
 
 are satisfied that, with ordinary candor and fair dealing on the part of Powers and the other parties implicated, the debt secured by the deed of trust could have been speedily discharged, and all the other incumbrances removed.
 

 But such was not the object of Le Claire and his associates, of whom Powers was clearly one. In the midst of the negotiation between May and Powers at the banking-house of Powers, with funds present, and ready to be paid over by May on the condition stated, Powers, upon the receipt of a note from John P. Cook, left abruptly, under a false pretence, and made a surreptitious sale of the property to Dessaint for $5000. A deed was ready, with a blank for the name of the purchaser, and the blank was at once filled with the name of Dessaint. The consideration mentioned in the deed is the amount of his bid. The promises of Powers to annul the sale upon the payment of the debt were obviously false, aud intended only to deceive and quiet May for the time being. Measures were taken to keep away competing bidders. The amount of the debt was $7400. Dessaint testifies that he bought under an agreement with Powers that he should pay the full amount of the debt; that Powers should procure to be assigned to him May’s liability for the difference between the amount of the debt and the amount at which the property should be struck off to him; and that he paid the full amount of the debt to Powers. This feature of the transaction requires no comment. Whether Dessaint was privy to the other frauds of Powers or not, a subject upon which we can hardly entertain a doubt,
 
 *232
 
 he took the title in trust for May, and subject to all May’s rights, as they were before the sale and conveyance were made by Powers.
 
 *
 

 On the 27th of July, 1859, Dessaint conveyed by a deed of quit-claim to Ebenezer Cook. The evidence satisfies us that Cook had full notice of the frauds of Powers and of the infirmities of Dessaint’s title. Whether this were so or not, having acquired his title by a quit-claim deed, he cannot be regarded as a
 
 bond fide
 
 purchaser without notice. In such cases the conveyance passes the title as the grantor held it, and the grantee takes only what the grantor could lawfully convey.
 
 †
 
 Cook occupied the same relations to the property as Dessaint, his grantor.
 

 Cook, on the 16th of December, 1860, conveyed to George L. Davenport. At the same time the judgment in favor of John P. Cook against May was assigned to the grantee. The conveyance and assignment were one transaction. The consideration, according to the testimony of Davenport, was that he agreed to pay a bill and note of Ebenezer Cook, on ■which he and Le Claire were liable as accommodation parties. The bill and note were dated on the 20th of October, 1859. 'They matured, respectively, three and four months from date. Both were renewed by Davenport and Le Claire. Davenport admits in his testimony that Le Claire paid at that time $1000 upon one of them.
 

 On the 21st of November, 1860, Antoine Le Claire bound himself by a written contract to convey the property to his nephew, Joseph Le Claire. In this condition of things Antoine Le Claire died. He left no lineal heirs. By his will he gave the usufruct of his entire estate to his wife, the defendant, Maguente Le Claire, during her life. The residue he gave, in undivided shares, to a large number of devisees. Only a few of them are parties to this litigation. Davenport testifies that Antoine Le Claire made a parol contract with him for the Rosebank farm, and, as the consideration of the purchase, agreed to pay the liabilities of Ebenezer Cook,
 
 *233
 
 which Davenport had assumed, and that his estate has since paid them.
 

 On the 23d of January, 1862, Davenport conveyed the premises to Joseph A. Le Claire, Jr., pursuant to directions from Joseph A. Le Claire, the vendee of Antoine Le Claire. The deed contains a covenant against all persons claiming under the grantor, and none other.
 

 John P. Cook was the counsel of Le Claire in all his transactions touching this property. He knew everything that was done, and his knowledge was notice to his client.
 
 *
 
 But we are well satisfied, by the facts and circumstances developed in the evidence, that both he and George'L. Davenport had full actual knowledge. After a careful consideration of the subject, we have found ourselves unable to come to any other conclusion. The testimony of Davenport is guarded and peculiar. Twice during his examination he declined to answer a question 'until time was allowed him to advise with his' counsel. The .proofs establish the frauds alleged in the bill-
 
 †
 

 If Le Claire did not actively participate in the frauds perpetrated upon May, he coolly looked on, and deliberately gathered what others had sown for him. The result was that he acquired the Bosebauk farm unincumbered, and put it out of the power of May to comply with his contract.
 

 The year within which May was to convey the farm to Le Claire, unincumbered, expired on the 8th of March, 1860. On the next day Le Claire gave a formal written notice to May whereby he tendered performance on his part, and demanded performance by May. May was unable to fulfil, and Le Claire knew it. The notice was an idle ceremony.
 

 The liabilities of Adrian H. Davenport, which Le Claire had assigned to May and deposited with Cook & Sargent, consisted of five notes of $7000 each, making an aggregate of $35,000, with interest. Le Claire withdrew them from the depositaries and cancelled the assignment. On the 27th
 
 *234
 
 of March he entered into a new contract with Davenport, whereby it was stipulated as follows: Le Claire w'as to resume the title and possession of the property for which the. notes and the mortgage securing them were given, provided the property could be relieved from the liens upon it, of judgments against Davenport. To this end Le Claire was to foreclose the mortgage, and if at the foreclosure sale the property should sell for more than the amount of the notes and interest, Davenport was to have the overplus. If it should bring less the notes were to be released. If Le Claire should acquire the title as proposed, he agreed to confirm the sales, which Davenport represented he had made, of certain portions-of the property. A map was referred to as showing the premises so sold. Davenport assigned to Le Claire, and placed in his hands notes of the vendees for part of the purchase-money, amounting, with interest, to about $16,000. Davenport stipulated that there were no offsets against any of the notes, except two of trifling amount, which were mentioned, and that if it should-prove there were any valid offsets, he would pay the amount to Le Claire. Le Claire agreed that, upon the payment to him of the balance of the purchase-money by Davenport’s vendees, he would convey to those holding title-bonds from Davenport.
 

 This agreement was carried out. A suit of foreclosure was instituted by Le Claire, and the property was sold to him for less than the amount due on the notes of Davenport. The property was thus divested of all incumbrances, and his original title was restored to him. John P. Cook, as the counsel of Le Claire, conducted the legal proceedings. May was not consulted about the agreement between Le Claire and Davenport, and was not a party to the foreclosure suit.
 

 It has been suggested by the counsel for the appellees that if May still has the rights which he claims in respect to the Posebank farm, he should file a bill to redeem, and having succeeded, should tender a conveyance of the property in performance of his contract with Le Claire instead
 
 *235
 
 of prosecuting this suit. That course is unnecessary. Le Claire has already had the ownership, control, and full benefit of the property, and disposed of it as he thought proper. A court of equity can' do no more than he did for himself. It is not pretended that there was any incumbrance upon the property when it was conveyed by George L. Davenport to Joseph A. Le Claire, Jr.
 

 Upon the execution of the contract between May and Le Claire, Le Claire became in equity the owner of the farm. The effect of the element of fraud in his subsequent conduct is, that he must be regarded as constructively the trustee and agent of May in removing the incumbrances and acquiring the ownership and beneficial control of the property. Hence his estate is entitled to be credited with his advances and interest instead of the aggregate of the debts extinguished, and interest on that amount. Under the circumstances, time was not of the essence of the contract on the' part of May, and when this liability has been accounted for to Le Claire’s estate, the contract on May’s part must be held to have been fully performed. May has had no benefit from this property since the date of his contract, and none from what he was to receive from Le Claire. On the contrary, he has been engaged in a long and expensive conflict for the assertion of his rights, and that contest is not yet terminated. Viewing the subject in the light of these facts, we think he is entitled to be credited with annual rent and interest from the time he parted with the possession of the farm to Le Claire.
 

 At law, in many cases, if property be tortiously taken or converted, the tortfeasor may be sued in trespass or trover, or the injured party may waive the tort and sue in assumpsit. In the latter case the same results follow as if there had been an implied contract. The plaintiff’ is not permitted to set up his tort to defeat the action, and the recovery of a judgment will bar a further action
 
 ex delicto
 
 by the plaintiff.
 
 *
 
 In the same class of cases where the converted prop
 
 *236
 
 erty has assumed altered forms by successive investments, the owner may follow it as far as he can trace it and sue at law for the substituted property, or he may hold the wrongdoer liable for appropriate damages.
 
 *
 

 There are kindred principles in equity jurisprudence, whence, indeed, these rules of the common law seem to have been derived. Where a trustee has abused his trust in the same .manner, the
 
 cestui que trust
 
 has the option to take the original or the substituted property; and if either has passed into the hands of a
 
 bond fide
 
 purchaser without notice, then its value in money. If the trust property comes back into the hands of the trustee, that fact does not affect the rights of the
 
 cestui que trust.
 
 The cardinal principle is that the wrong-doer shall derive no benefit from his wrong. The entire profits belong to the
 
 cestui que trust,
 
 and equity will so mould and apply the remedy as to give them to him.
 

 In cases of specific performance, to which category the one before us belongs, parties are sometimes remitted to a court of law. But this is never done where the remedy is not as effectual and complete there as the chancellor can make it. Equity sometimes takes jurisdiction ou account of the parties, and sometimes on account of the relief proper to be administered.
 

 The same considerations which invoke the jurisdiction may control the remedy.
 

 In this case more than half the residuary devisees of Antoine Le Claire are not before us. We cannot, therefore, decree the conveyance of real estate, but his legal representatives are before us, and we can give a money decree against them, embracing the valué of the land, which we might otherwise adjudge to be conveyed.
 
 †
 
 It is not necessary that the devisees should be parties to warrant such a judgment. The presence of the executors is sufficient for that purpose.
 

 Adrian H. Davenport, as well as Le Claire, had full notice
 
 *237
 
 of the rights of May in respect to the securities embraced in their compromise. All those securities, including the col-laterals, belonged in equity to May from the time they were deposited with Cook & Sargent.- Le Claire had no right to change their form or to dispose of them, as was done in carrying out the compromise agreement. It is within the power of this court, in the exercise of its equitable jurisdiction, to annul that-arrangement, and hold Davenport and Le Claire’s estate liable in all respects as if the compromise had not been made. But it is also in our power to confirm the transaction, and upon the principles of constructive trusts to give May its fruits instead of pursuing the effects themselves. This, as the case is presented in the record, we deem the proper course. Le Claire’s estate must account for the proceeds of the $16,000 of notes, with interest from the time he received them. As we cannot require the land which he bought at the foreclosure sale to be conveyed, his estate must account for its present value. As he violated his agreement with May, and put it out of his power to give May in specie so large a portion of the consideration May was entitled to receive, May is not bound to take the other parcels of real estate mentioned in the contract and which Le Claire bound himself to convey, and it is within the scope of our jurisdiction to give May, in money, the present value of that property also instead of the property itself. We deem it proper, under the circumstances, to do so, and Le Claire’s estate must account accordingly. The collection of the judgment against May upon his note to Kettle, recovered by Cook, must be perpetually enjoined.
 

 An account must be taken by a master, wherein Le Claire’s estate must be debited with the rent of the Rose-bank farm annually and interest down to the time when the account is taken.
 

 With the amount realized from the $16,000 of notes and interest to the same period.
 

 With the value, at the same time, of the land bought in at the foreclosure sale by Le Claire, other than that pre
 
 *238
 
 viously sold by Davenport, the title to which Le Claire took in trust for Davenport’s vendees.
 

 With the value, at the same time, of the other parcels of land mentioned in the agreement between Cook and Le Claire and which Le Claire bound himself to convey to May.
 

 Le Claire’s estate must be credited with the amount paid on account of the bill and note of Ebenezer Cook, with interest to the same time.
 

 The balance in favor of May, with interest from that time, Le Claire’s executors must be required to p'ay to May.
 

 These conclusions will do justice to May without disturbing the interests of any third person outside of the sphere of Le Claire’s estate.
 

 Decree reversed, and the cause remanded with directions to enter a decree and proceed in conformity to this opinion.
 

 Mr. Justice MILLER took no part in this judgment, having in the early stages of the case been counsel of May, below.
 

 *
 

 Levy
 
 v.
 
 Arredondo and others, 12 Peters, 218; Mandeville
 
 v.
 
 Burt, 8 Id. 256; Harrison
 
 v.
 
 Nixon, 9 Id. 483; Finley
 
 v.
 
 Linn, 6 Cranch, 252; Lewis
 
 v.
 
 Darling, 16 Howard, 1.
 

 *
 

 Jeremy’s Equity, 95.
 

 †
 

 Oliver
 
 v.
 
 Piatt and others, 3 Howard, 363.
 

 *
 

 Le Neve
 
 v.
 
 Le Neve, 2 White’s Leading Cases in Equity, 23.
 

 †
 

 Clark’s Executors
 
 v.
 
 Van Reimsdyk, 9 Cranch, 153; S. C., 1 Gallison, 630; Jackson
 
 v.
 
 King, 4 Cowen, 220; Butler
 
 v.
 
 Haskell, 4 Dessausure, 684,
 

 *
 

 Putnam
 
 v.
 
 Wise, 1 Hill, 240, note; Hill
 
 v.
 
 Davis, 3 New Hampshire, 384; Stockett v. Watkins’s Administrator, 2 Grill
 
 &
 
 Johnson, 326, 342.
 

 *
 

 Taylor
 
 v.
 
 Plummer, 3 Maule & Selwyn, 562.
 

 †
 

 Peabody et al.
 
 v.
 
 Tarbell, 2 Cushing, 233; Andrews
 
 v.
 
 Brown, 3 Id. 131; Pry on Specific Performance, 447, 457; 1 Story’s Equity, jl$ 788, 789.