Clark v. Morris.

---

CHARLES W. CLARK, *Appellee,* v. WALTER MORRIS, *Appellant,* and PHILIP SCHOTT, *Appellee.*

No. 17,946.

SYLLABUS BY THE COURT.

1. ABSOLUTE DEED—*A Mortgage—Sale to Bona Fide Purchaser—Measure of Damages.* The owner of land executed a deed absolute in form, but intended it as a mortgage to secure the payment of a loan from the grantee, and the grantee, in violation of the agreement, conveyed the land to a *bona fide* purchaser and thereby deprived himself of the power to reconvey it to the grantor upon the payment of the debt. The grantor had no notice of the sale or of the rights acquired by the *bona fide* purchaser in the land until some time after the sale was made, and later the grantor tendered full payment of the debt secured by the deed and requested a reconveyance of the land, but both tender and request were refused. In an action brought by the grantor to redeem the land, or for the damages he had sustained in case redemption could not be had, it is held that the measure of damages for which the grantee is liable was the value of the land at the time that the tender of payment and demand for reconveyance of the land were refused, less the amount of the debt secured by the deed, and not its value at the time that the sale was wrongfully made by the grantee.

2. EVIDENCE—*Excluded—When Ruling on Same is Reviewable.*
A ruling excluding evidence is not open to review unless such
evidence is produced on the motion for a new trial by affidavit,
deposition or oral testimony.

Appeal from Sedgwick district court, division No. 1.
Opinion filed February 8, 1913. Affirmed.

H. C. *Sluss,* of Wichita, for the appellant.
*Brubacher & Conly,* of Wichita, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This was an action to redeem cer-
tain city lots which had been mortgaged by Charles W.
Clark to secure the payment of $150 borrowed from
Walter Morris on October 17, 1906. The instrument
given as security was in form an absolute deed, but
was intended as a mortgage. After this transaction
Clark purchased the property at a subsequent tax sale,
and the certificate then obtained was assigned to
Morris as additional security. The borrowed money
was to be paid in small installments at fixed times, but
Clark failed to make the payments at the times stipu-
lated. On April 9, 1909, Morris sold the lots to Philip
Schott, who had no notice of the rights of Clark or that
he was in fact the owner of the lots, and by this sale
Morris disabled himself to reconvey the lots to Clark
upon the payment of the debt. The writings evidenc-
ing the sale to Schott were not recorded, and Clark had
no notice that Schott had purchased the lots until the
writings were produced at the trial of this action.
Before the sale to Schott, Morris, with four men, went
to the lots one morning before daylight and put up a
post and single wire fence around them. Clark dis-
covered the action of Morris before the fence was fin-
ished, and in an interview Morris informed Clark that
he had concluded to take possession of the lots. Morris
testified that Clark then consented that he should take

48—88 KAN.

possession of the lots and that they should be regarded as his property. On the other hand, Clark's testimony is that he told Morris that because of sickness in his family he had been unable to make the payments as agreed upon, and that he did not know just what his legal rights were, but whatever they were he was going to stand on them. He denied positively that he surrendered possession of the property or disclaimed ownership in them, and the fact that he tore down the fence on the same morning and continued to use the property as he had previously done tends to support his testimony. On June 22, 1910, Clark tendered to Morris the full payment of the borrowed money with the accrued interest, and demanded that he convey the property back to Clark in accordance with the agreement, but both tender and demand were refused. On the trial Morris claimed to be the owner of the lots and that Clark had voluntarily surrendered possession of them, and at the same time had disclaimed any interest in them. The trial court found in favor of Clark, holding that the deed was intended to be and was in fact a mortgage, and that as against Morris he had a right to redeem; but it was also found that Schott, who had been made a party to the action, was a *bona fide* purchaser of the lots, and therefore redemption could not be enforced as against him.

The first and principal ground assigned as error is that a wrong measure of damages was applied in fixing the liability of Morris. The court decided that he was liable for the value of the lots as they were when the tender of payment was made and the reconveyance of the lots was refused, while on the other side it was contended that a cause of action arose when Morris sold the property and placed it beyond his power to reconvey, and that its value at the time of sale was the measure of recovery. In a proceeding of this kind equitable considerations govern, and the measure of

damages must depend largely upon the particular cir-
cumstances of each case. It appears that the contract
of sale from Morris to Schott was not recorded and
that Clark had no knowledge of the contract or of the
sale to Schott until the trial was begun. Clark had a
right to suppose that what was intended to be a mort-
gage would be treated as a mortgage by both, and that
the rights of each would be finally measured by the
terms of the agreement. The transfer of the land in
violation of their agreement operated as a fraud upon
Clark. In some of the cases it is held that if there is no
actual fraud the grantee is required to account for the
full value of the land at the time he sold it, while other
authorities hold that he is only required to pay the
amount actually received for the land over and above
the debt secured by the land. In still others it is held
that the measure of the owner's recovery is the utmost
value of the property at the time of the trial, less the
amount of the mortgage debt. (27 Cyc. 1033, and cases
cited.) In *Boothe v. Fiest,* 80 Tex. 141, 15 S. W. 799,
where the owner of land gave an absolute deed to secure
a loan from the grantee and afterwards transferred the
title to a *bona fide* purchaser, it was held that the meas-
ure of the grantor's right to recover was the value of
the land at the day of trial, less the debt secured, and
interest. In *Hart v. Ten Eyck,* (N. Y.) 2 John. Ch.
Rep. *62, Chancellor Kent ruled that where land or
other property is held in trust by another who sells the
same in violation of his trust he "must answer for the
value, not as it existed at the time of the sale, for that
would not be an indemnity, and would be too great an
indulgence to fraudulent breaches of trust, but for the
value of the land as it existed at the commencement of
the suit, if not at the time of taking the account by the
master." (p. *117.)

In *Burdick v. Seymour,* 39 Iowa, 452, an instrument
conveying land was defectively recorded, and the

grantor, to defeat the first conveyance, deeded the property to another and thereby transferred a good title to it, and it was held that the measure of damages was the highest value of the land at any time between the purchase by the first grantee and the commencement of his action to recover damages. It was further held that the liability was not on account of the breach of warranty but because of the fraud of the grantor in making the transfer. In *Elisha Gibbs v. Reuben Champion,* 3 Ohio, 335, there was a sale of land, and the vendor refused to convey because the first installment of the purchase price was not paid when it was due. The vendee tendered the full amount of the purchase money when the second installment became due, but the vendor had sold the property to a third person and had disabled himself to make a conveyance to the vendee. The court held that as the vendor had treated the contract with the vendee as a continuing one and had taken no steps to relieve the vendee from liability on the contract it was still binding, and having transferred the property to an innocent purchaser he was liable in damages to the vendee and the measure of damages was "the difference between the purchase money, and the value of the unimproved lot, at the time the party entitled himself to a conveyance, by tendering the purchase money." (p. 337.)

Other authorities to the same effect are: *May v. Le Claire,* 78 U. S. 217; *Meehan v. Forrester et al.,* 52 N. Y. 277; *Gibbs v. Meserve,* 12 Ill. App. 613; *Linnell v. Lyford,* 72 Maine, 280; *Johnson v. McMullin,* 3 Wyo. 237, 21 Pac. 701, 4 L. R. A. 670.

Some of the authorities referred to in 27 Cyc. 1033 hold that the value should be ascertained as of the time the sale of the property is made, and where there is notice of the sale and freedom from fraud such a rule might be deemed equitable. In view of the circumstances of this case the rule of the trial court that damages should be measured by the value of the lots

when Clark tendered the amount of the debt and en-titled himself to a reconveyance of the property ap-pears to be equitable and well within the authorities.

Complaint is made as to the exclusion of evidence from the jury as to the surrender of possession and the disclaimer of interest in the property by Clark, but the ruling is not open to our consideration. By sec-tion 307 of the civil code a party who wishes to avail himself of a ruling excluding offered evidence as error is required to produce such evidence on the motion for a new trial, by affidavit, deposition or oral testimony of the witnesses. This was not done, and hence that ruling, whatever it may have been, can not be regarded as a ground for reversal. It might be said, however, that testimony upon this subject was received in evi-dence in the trial which was had before the jury was called. At the end of that trial the court appears to have determined every question in the case except as to the amount of damages sustained by Clark, or, in other words, the value of the property when payment of the debt was tendered by Clark. In the testimony then received, including that relating to an alleged dis-claimer of ownership, the court determined that Morris held no more than a mortgage lien on the property and that as against him Clark had a right of redemption. There was testimony, too, before the court at that time in regard to the value of the lots, and the court might very well have gone farther and made a final disposi-tion of the case, deciding for itself the value of the property and the amount of recovery. However, the court impaneled a jury and received testimony on the question of value at the time of Clark's tender, and the jury's finding was approved by the court. There was no occasion to resubmit the questions previously de-termined by the court, and assuming that the testi-mony as to the voluntary surrender of possession and

the disclaimer of interest in the lots was then admissible, the question of its rejection, as we have seen, is not preserved for review.

The judgment of the district court will be affirmed.