OPINION *Page 2 
{¶ 1} Appellant State of Ohio ex rel. Marc Dann, Attorney General of the State of Ohio appeals the January 3, 2007 decision of the Stark County Court of Common Pleas that granted appellee Chase Bank USA, N.A.'s motion for summary judgment and overruled the State's objection to the proposed distribution of the Sheriff sale proceeds.
 STATEMENT OF THE FACTS AND CASE {¶ 2} This is a foreclosure action filed by FirstMerit Mortgage Co. against Daniel and Theodora Beers, seeking to foreclose on their delinquent mortgage against the property located at 5539 Erie Avenue, N.W., Canal Fulton, Ohio (the "Property"). Defendant-Appellee Chase Bank USA, N.A., is the holder of a mortgage against the Property junior to FirstMerit's mortgage.
 {¶ 3} On June 20, 2005, Chase filed a Motion for Default Judgment in this case because the Beers were in default of filing an Answer. On July 15, 2005, the trial court filed an Entry granting Chase's Motion for Default Judgment and ordered that the Property be sold at Sheriff's Sale.
 {¶ 4} On July 18, 2005, the Attorney General filed a Motion to Intervene in this case, alleging that the Beers "acquired the Property as a result of wrongful conduct." (See the State's Motion to Intervene at 4.) On August 16, 2005, the trial court filed an Entry granting the State's Motion to Intervene.
 {¶ 5} On October 17, 2005, the Attorney General filed his Answer and Cross-claim. In the State's Cross-claim, the Attorney General alleged that the proceeds associated with the sale of the Property should be returned "free and clear of all liens *Page 3 
and other encumbrances" because of the alleged breach of fiduciary duty of Daniel J. Beers, Ronald S. Beers, and Bruce Hawthorn. (See the State's Cross-claim.).
 {¶ 6} On January 5, 2006, the trial court issued an Order of Sale to the Stark County Sheriff, and a Sheriff's Sale of the Property was scheduled to occur on May 8, 2006.
 {¶ 7} On May 8, 2006, Chase purchased the Property at the Sheriff's Sale for two hundred ten thousand dollars ($210,000.00). On May 17, 2006, Chase submitted a proposed journal entry confirming the sale and ordering the distribution of proceeds. Under the proposed distribution, proceeds would be distributed first to the Clerk of Courts ($6,552.07), second to the Sheriff ($50), third to FirstMerit ($196,052.46), and finally to Chase ($7,34548). The proceeds of the Sheriffs sale were sufficient to satisfy all administrative costs and FirstMerit's entire mortgage. Chase would recover a fraction of its mortgage. All other parties with interest in the Property would be unsatisfied.
 {¶ 8} On June 13, 2006, the State filed its Objection to Proposed Distribution ("the State's Objection"). The Attorney General argued that it possessed a constructive trust over the proceeds which has priority over FirstMerit's and Chase's mortgage liens, and therefore the Attorney General is entitled to distribution of all the proceeds after payment to the Clerk of Courts and the Sheriff.
 {¶ 9} The Attorney General states that Daniel Beers acquired the Property indirectly from the Barberton Rescue Mission ("Mission") and/or improved the Property with assets of the Mission and/or assets of the Mission that had been wrongfully diverted by Daniel Beers in concert with other principals and/or employees of the Mission. Because the Mission is a charitable organization, and because Daniel Beers *Page 4 
acquired and/or improved the Property as a result of his wrongful conduct, the Attorney General claims that the Property is impressed with a charitable and/or constructive trust for the benefit of the beneficiaries of the Mission.
 {¶ 10} The Attorney General and the Mission brought an ultimately successful suit in Summit County against Daniel Beers for his improper activities. The jury found Mr. Beers liable to the Attorney General and the Mission for compensatory and punitive damages in an amount in excess of $3 million. The jury found Mr. Beers liable for breach of fiduciary duties, fraud, solicitation fraud, conversion, and unjust enrichment. See, Barberton Rescue Mission dba Christian Brotherhood Newsletter, etal. v. Bruce Hawthorn, et al. Summit County Court of Common Pleas, Case No. CV-2000-12-5496.
 {¶ 11} Thus, the Attorney General claims that the constructive trust has priority over the mortgage liens recorded by FirstMerit and Chase.
 {¶ 12} A Status Conference was held in this case, at which the trial court established a briefing schedule on the issue of distribution of the Net Sale Proceeds, which the parties agreed was the only issue that remained in the case.
 {¶ 13} Thereafter: (1) Chase filed its Motion for Summary Judgment on the Issue of Distribution of Net Sale Proceeds ("Chase's Motion for Summary Judgment"); (2) FirstMerit filed its Memorandum Contra to the State's Objection to Proposed Distribution; and (3) the State filed its Memorandum and Brief on the Issue of Priority of Distribution of Proceeds.
 {¶ 14} On January 3, 2007, the trial court filed its Judgment Entry ("the Judgment Entry") granting Chase's Motion for Summary Judgment and overruling the Attorney General's objection to the proposed distribution. Specifically, the trial court held that: (1) *Page 5 
Chase and FirstMerit are bona fide mortgagees; and (2) the State did not offer any evidence to refute that Chase and FirstMerit are bona fide mortgagees.
 {¶ 15} It is from the trial court's January 3, 2007 Judgment Entry that the Attorney General has timely appealed, raising the following three assignments of error:
 {¶ 16} "I. THE TRIAL COURT ERRED WHEN IT COMPLETED DEFENDANT BEERS' FRAUD BY TREATING THE BANKS AS BONA FIDE PURCHASERS AND AWARDING PRIORITY TO THE BANKS' MORTGAGES, WHEN DEFENDANT BEERS HELD THE PROPERTY UNDER A CHARITABLE, CONSTRUCTIVE TRUST FOR THE BENEFIT OF THOUSANDS OF DEFRAUDED BENEFICIARIES OF THE MISSION AND ITS NEWSLETTER DIVISION.
 {¶ 17} "II. THE TRIAL COURT ERRED WHEN IT ASSIGNED THE BURDEN OF PROOF TO THE ATTORNEY GENERAL WHEN DETERMINING DEFENDANT CHASE'S MOTION FOR SUMMARY JUDGMENT.
 {¶ 18} "III. THE JUDGMENT ENTRY APPEALED FROM MAY NOT BE A FINAL APPEALABLE ORDER, BECAUSE IT NEVER DETERMINED THE ATTORNEY GENERAL'S CROSS-CLAIM."
 Summary Judgment Standard {¶ 19} Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. Smiddy v. The Wedding Party, Inc. (1987),30 Ohio St. 3d 35, 36, 506 N.E. 2d 212. As such, we must refer to Civ.R. 56 which provides, in pertinent part:
 {¶ 20} "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of *Page 6 
evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor."
 {¶ 21} Accordingly, summary judgment is appropriate only where: (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party. Tokles Son, Inc. v. Midwestern Indemn. Co. (1992),65 Ohio St.3d 621, 629, 605 N.E.2d 936, citing Harless v. Willis DayWarehousing Co. (1978), 54 Ohio St.2d 64, 65-66, 375 N.E.2d 46.
 {¶ 22} The party seeking summary judgment initially bears the burden of informing the trial court of the basis for the motion and identifying portions of the record demonstrating an absence of genuine issues of material fact as to the essential elements of the nonmoving party's claims. Dresher v. Burt (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264. The moving party may not fulfill its initial burden simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case. Id. Rather, the moving party must support its motion by pointing to some evidence of the type set forth in Civ.R. 56(C), which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. Id. If the moving party fails to *Page 7 
satisfy its initial burden, the motion for summary judgment must be denied. Id. However, once the moving party satisfies its initial burden, the nonmoving party bears the burden of offering specific facts showing that there is a genuine issue for trial. Id. The nonmoving party may not rest upon the mere allegations and denials in the pleadings, but, instead, must point to or submit some evidentiary material that demonstrates a genuine dispute over a material fact. Civ.R. 56(E);Henkle v. Henkle (1991), 75 Ohio App.3d 732, 735, 600 N.E.2d 791.
 {¶ 23} Appellate review of summary judgments is de novo. Koos v. Cent.Ohio Cellular, Inc. (1994), 94 Ohio App.3d 579, 588, 641 N.E.2d 265;Midwest Specialties, Inc. v. Firestone Tire Rubber Co. (1988),42 Ohio App.3d 6, 8, 536 N.E.2d 411. We stand in the shoes of the trial court and conduct an independent review of the record. As such, we must affirm the trial court's judgment if any of the grounds raised by the movant at the trial court is found to support it, even if the trial court failed to consider those grounds. See Dresher, supra; Coventry Twp. v.Ecker (1995), 101 Ohio App.3d 38, 41-42, 654 N.E.2d 1327.
 {¶ 24} It is based upon this standard that we review appellants' assignments of error.
 I. {¶ 25} In his first assignment of error the Attorney General contends that a constructive trust was imposed at the time of Mr. Beers' wrongful activities. Therefore, according to the State, Mr. Beers held the property in a charitable and/or constructive trust for the benefit of the beneficiaries of the Mission and could not encumber the property for his own personal debt. The Attorney General further contends that *Page 8 
FirstMerit and Chase are mortgagees and, therefore they are not bona fide purchasers for value entitled to priority over the Attorney General's claimed interest in the property.
 {¶ 26} In his second assignment of error, the Attorney General contends that the trial court improperly placed the burden of proof upon the State in deciding Chase's motion for summary judgment.
 {¶ 27} Because we find the resolution of these issues to be intertwined, we shall address the assignments of error together.
 {¶ 28} In order to review the priority issues arising in this case, a brief timeline is helpful.
 {¶ 29} January 20, 1986 — Title to the Property is vested in Michael J. Fearon.
 {¶ 30} January 10, 1996 — Fearon conveys Property to Barberton Rescue Mission (recorded January 12, 1996).
 {¶ 31} October 1, 1996 — Property deeded to the Christian Brotherhood Division of the Barberton Rescue Mission, Inc. (recorded October 15, 1996).
 {¶ 32} December 13, 1996 — Property conveyed to Appellants Daniel and Theodora Beers by warranty deed (recorded December 19, 1996).
 {¶ 33} September 4, 1998 — the Beers execute a note to FirstMerit in the amount of $166,500, secured by a mortgage on the Property in favor of FirstMerit (recorded September 10, 1998).
 {¶ 34} November 25, 1998 — the Beers execute a note to Chase in the amount of $201,500, secured by a mortgage on the Property in favor of Chase (recorded December 1, 1998). *Page 9 
 {¶ 35} December 11, 2000 — the Attorney General files a Complaint in the Summit County Court of Common Please on behalf of the Barberton Rescue Mission against Daniel Beers and others.
 {¶ 36} January 7, 2005 — this foreclosure action was filed.
 {¶ 37} The Attorney General argues that the property is subject to a constructive trust because "Daniel Beers acquired [the Property] indirectly from [the Mission] and/or improved the Property with assets of the Mission and/or assets of the mission that had been wrongfully diverted by Dan [sic] Beers in concert with other principals and/or employees of the Mission." [Objection to Proposed Distribution, filed June 13, 2006 at 3]. In support of its position that the property is subject to a constructive trust, the State has presented copies of the Complaint, relevant Jury Interrogatories, and the final Judgment Entry from Barberton Rescue Mission dba Christian Brotherhood Newsletter, etal. v. Bruce Hawthorn, et al. Summit County Court of Common Pleas, Case No. CV-2000-12-5496. Therefore, according to the State, Mr. Beers held the property in a charitable and/or constructive trust for the benefit of the beneficiaries of the Mission and could not encumber the Property for his own personal debt.
 {¶ 38} The Ohio Supreme Court has adopted the following definition of a constructive trust:
 {¶ 39} "`[A] trust by operation of law which arises contrary to intention and in invitum, against one who, by fraud, actual or constructive, by duress or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct, artifice, concealment, or questionable means, or who in any way against equity and good conscience, either has obtained or holds the legal right to property which he ought not, *Page 10 
in equity and good conscience, hold and enjoy. It is raised by equity to satisfy the demands of justice.'" Ferguson v. Owens (1984),9 Ohio St.3d 223, 225, 9 OBR 565, 459 N.E.2d 1293, quoting 76 American Jurisprudence 2d (1975) 446, Trusts, Section 221; See also, Univ. Hosps. Of Cleveland,inc. v. Lynch, 96 Ohio St.3d 118, 129-130, 2002-Ohio-3748 at ¶ 59,772 N.E.2d 105, 118. A constructive trust is imposed "not because of the intention of the parties but because the person holding the title to property would profit by a wrong, or would be unjustly enriched if he were permitted to keep the property." Restatement of the Law, Restitution, Section 160, Comment b. Univ. Hosps. Of Cleveland, inc. v.Lynch, supra.
 {¶ 40} A party seeking the judicial recognition of either a constructive or resulting trust bears the burden of producing clear and convincing evidence justifying it. Univ. Hosps. Of Cleveland, inc. v.Lynch, supra. The standard of "clear and convincing evidence" is defined as "that measure or degree of proof which is more than a mere `preponderance of the evidence,' but not to the extent of such certainty as is required `beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." Cross v.Ledford (1954), 161 Ohio St. 469, 53 O.O. 361, 120 N.E.2d 118, paragraph three of the syllabus; State v. Schiebel(1990), 55 Ohio St.3d 71,564 N.E.2d 54; In re Adoption of Holcomb (1985), 18 Ohio St.3d 361, 368,481 N.E.2d 613, 620.
 {¶ 41} Where the proof required must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof. Ford v. Osborne (1887), 45 Ohio St. 1, 12 N.E. 526, paragraph two of the syllabus. However, it is also firmly established that *Page 11 
judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court. State v. Schiebel, supra. An appellate court should not substitute its judgment for that of the trial court when there exists competent and credible evidence supporting the findings of fact and conclusions of law rendered by the trial court judge. See Seasons CoalCo. v. Cleveland (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 411,461 N.E.2d 1273, 1276; C.E. Morris Co. v. Foley Constr. Co. (1978),54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578.
 {¶ 42} Assuming arguendo, as the trial court did, that, even if the Attorney General establishes by clear and convincing evidence the existence of a constructive trust in October, 1996 when the property was transferred to Daniel and Theodora Beers the question then becomes whether the beneficiaries of that trust are entitled to recover the proceed from the sale of the property.
 {¶ 43} Under general trust law, when trust property is transferred to a third party in breach of a trustee's fiduciary duty, the third party takes such property subject to the trust, unless it is a "bona fide purchaser for value." Harris Trust and Savings Bank v. Salomon SmithBarney Inc. (2000), 530 U.S. 238, 250; see also United States v.Dunn(1925), 268 U.S. 121, 133, 45 S.Ct. 451, 454; May v. Leclaire(
1870), 78 U.S. 217, 236, 20 L.Ed. 50; Dixon v. Caldwell (1864),15 Ohio St. 412, 416; RESTATEMENT (SECOND) OF TRUSTS § 294 (1959). A bona fide purchaser for value is a transferee who takes trust property without notice of the breach of a trust, and it takes the property free of the trust's interest. Harris Trust, 530 U.S. at 251; see also RESTATEMENT (SECOND) OF TRUSTS § 284(1). If the transferee is not a bona fide purchaser for value or if the transferee had notice of the breach of a trust, the original trustee or the *Page 12 
trust's beneficiaries may bring an action against the transferee for restitution of the trust property. See id. at 250.
 {¶ 44} In the case at bar, the Attorney General contends that FirstMerit and Chase are mortgagees and, therefore they are not bona fide purchasers for value entitled to priority over the Attorney General's claimed interest in the property. We disagree.
 {¶ 45} In Shorten v. Drake (1882), 36 Ohio St. 76, A. bought land and transferred it to his wife in fraud of his creditors. A. and his wife then mortgaged the land. In holding that the rights of the mortgagee were paramount to the rights of A.'s creditors, the Ohio Supreme Court noted: "As to the priority of the mortgage. At the time of taking the mortgage the legal title was held by Mrs. Sargent, and the findings show that the mortgagee had no notice of any fraud or infirmity in it. The mortgage is supported by a valuable consideration passing at the time of its execution, and the mortgagee took it, as is said in the finding, believing `Mrs. Sargent to be the bona fide owner of said premises described in said mortgage'.
 {¶ 46} "The mortgagee therefore stands on the footing of a bona fide purchaser for value of the legal title, and is entitled to be protected as such". Id. at 84-85. See also, Wayne Building Loan Co. v.Yarborough (1967), 11 Ohio St.2d 195, 200; First Church of God of SouthLebanon v. Rudd (March 2, 1987), 12th Dist. No. CA86-08-052.
 {¶ 47} "[A] good faith mortgagee is charged with constructive notice only of the rights of persons in possession and the rights of persons claiming an interest under a duly recorded instrument * * *." MellonNational Mortgage Co. of Ohio v. Jones (1977), 54 Ohio App.2d 45, 48. If at the time of taking the mortgage, legal title was held by the *Page 13 
intended mortgagor, the mortgagee had no notice of any fraud or infirmity in the title, and the mortgage was supported by valuable consideration, the mortgagee is entitled to protection as a bona fide purchaser. Rudd, supra. (Citing Shorten v. Drake, supra.).
 {¶ 48} In the case at bar we agree with the trial court's conclusion Chase and FirstMerit are bona fide mortgagees because they obtained their interest in the Property without actual knowledge or constructive notice of wrongdoing on the part of the Beers or of the State's equitable interest in the Property.
 {¶ 49} The Attorney General does not dispute that both FirstMerit and Chase submitted evidentiary materials establishing that, according to the documents filed of record with the Recorder's Office, the Beers held title to the property. Moreover, no documents filed of record with the Recorder's Office or other public records afforded constructive notice that: (1) the Beers' interest in the property was obtained by breach of fiduciary duty, fraud, solicitation fraud, conversion, or unjust enrichment, (2) the State possessed an equitable interest in the Property, or (3) any other party possessed a, similar adverse interest. (Affidavit of Debra L. Rezendes; Affidavit of Leah Steil, Exhibits B C, Chase's Motion for Summary Judgment, filed October 31, 2006).
 {¶ 50} The Attorney General contends that Chase did not present evidentiary quality material to demonstrate that it did not have actual notice of Beers' breach of duty. [Appellant's Brief at 18]. However, the affidavit of Ms. Steil clearly states that "Chase did not have actual knowledge" of the breach. (Affidavit of Leah Steil, attached as Exhibit C to Chase's Motion for Summary Judgment, filed October 31, 2006). Accordingly the burden shifted to the Attorney General to offer specific facts showing that there is a genuine issue for trial. The nonmoving party may not rest upon the mere *Page 14 
allegations and denials in the pleadings, but, instead, must point to or submit some evidentiary material that demonstrates a genuine dispute over a material fact. Civ.R. 56(E); Henkle v. Henkle (1991),75 Ohio App.3d 732, 735, 600 N.E.2d 791. The Attorney General offered no evidence contra in the trial court. Nor does the Attorney General cite to any evidence in the record before this Court to demonstrate that either FirstMerit or Chase had actual notice that the Beers' interest in the property was obtained by breach of fiduciary duty, fraud, solicitation fraud, conversion, or unjust enrichment; the State possessed an equitable interest in the property; or any other party possessed a, similar adverse interest.
 {¶ 51} We thus find no error in the grant of summary judgment in favor of Chase in this matter. We further find no error in the trial court's overruling the Attorney General's Objection to the proposed distribution of the proceeds from the Sheriff's sale.
 {¶ 52} Appellant's first and second assignments of error are overruled.
 III. {¶ 53} In his third assignment of error the Attorney General contends that the trial court's Judgment Entry filed January 3, 2007 is not a final appealable order because it did not adjudicate the Attorney General's cross-claim and does not contain Civ. R. 54 language. We disagree.
 {¶ 54} Civ. R. 54(B) is based on its federal counterpart, Fed.R.Civ.P.54(b), see Staff Notes to Civ. R. 54(B), and provides:
 {¶ 55} "When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim or third-party claim, or when multiple parties are involved, the court may enter final judgment as to one or more but fewer than all of the *Page 15 
claims or parties only upon an express determination that there is no just reason for delay. * * *"
 {¶ 56} When all claims and parties are adjudicated in an action, Civ.R. 54(B) language is not required to make the judgment final. SeeCommercial Natl. Bank v. Deppen (1981), 65 Ohio St.2d 65, 19 O.O.3d 260,418 N.E.2d 399. General Acc. Ins. Co. v. Insurance Co. of NorthAmerica(1989), 44 Ohio St.3d 17, 21, 540 N.E.2d 266, 270.
 {¶ 57} In the case at bar, both FirstMerit and Chase filed motions to confirm the sheriffs sale and requests for an order of distribution of the proceeds. The Attorney General filed an objection to the distribution requesting the trial court order all the proceeds, after payment to the Clerk of Courts and the Sheriff, be delivered to the State on the basis of a constructive trust as argued in Assignments of Error I and II, supra. This objection reiterates the Attorney General's contentions set forth in his counterclaim.
 {¶ 58} By Judgment Entry filed July 13, 2006 the trial court set the matter for hearing on August 4, 2006. On June 28 and August 1, 2006 respectively FirstMerit and Chase filed motions to convert the August 4, 2006 hearing to a status conference. The parties argued that because the Attorney General's objection raises issues that must be fully litigated and likely would require discovery to be conducted, a status conference would allow the Court to set deadlines and briefing schedules. By Judgment Entry filed August 11, 2006 the trial court noted that it had conducted a telephone pretrial conference with the parties and set discovery and briefing deadlines, including a non-oral hearing date on or after November 18, 2006. *Page 16 
 {¶ 59} The Attorney General filed his Memorandum and Brief on the Issue of Priority of Distribution of Proceeds on October 31, 2006. The argument is virtually identical to the argument set forth by the Attorney General in the instant appeal, i.e. the State is entitled to all the proceeds by virtue of a constructive trust due to the Beer's breach of fiduciary duties. FirstMerit filed its brief in opposition with affidavits and exhibits on October 31, 2006. Chase filed a motion for summary judgment on October 31, 2006. On November 17, 2006 Chase filed a response to the Attorney General's memorandum. On that same day, the attorney General filed its response to both Chase and FirstMerits memorandums. The trial court granted Chase leave to file a response to the Attorney General's reply brief by Judgment Entry filed December 6, 2006.
 {¶ 60} Thus it appears that each party had ample opportunity to present its respective arguments and evidence concerning the priority and establishment of the various liens and the distribution of the proceeds of the Sheriff sale.
 {¶ 61} It does not appear that the Attorney General filed a motion to strike Chase's Motion for Summary Judgment. Nor does it appear in the record before us that the Attorney General objected to the trial court's consideration of Chase's motion for summary judgment. As previously noted, it appears from the record that the parties consented to the manner in which the trial courts proceeded to resolve the issues.
 {¶ 62} The issues raised in the Attorney General's counterclaim are the same issue he raised in his Objection to the Order of Distribution. It is axiomatic that when the trial court ruled that FirstMerit and Chase were entitled to the status of bona fide mortgagees for value that all of the issues in the underlying case were resolved. In other words, because the trial court ruled that the FirstMerit and Chase mortgages are senior *Page 17 
to any constructive trust that the Attorney General may be able to assert over the proceeds of the Sheriffs sale, and because the proceeds of the Sheriffs sale are insufficient to fully satisfy both the FirstMerit and Chase liens, there is no controversy left for trial. The property has been sold and the priority of interests in the net sale proceeds has been decided by the trial court's Judgment Entry. The trial court determined that the State does not have any claim to the proceeds. Accordingly, all claims and parties were adjudicated in the action. Therefore the Judgment Entry filed January 3, 2007 is a final appealable order which did not need to include Civ. R. 54 language.
 {¶ 63} Appellant's third assignment of error is overruled.
 {¶ 64} For the foregoing reasons, the judgment of the Stark County Court of Common Pleas, Ohio, is affirmed.
By Gwin, P.J., Farmer, J., and Delaney, J., concur
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Stark County Court of Common Pleas, Ohio, is affirmed. Costs to appellant. *Page 1